## Christopher *vs.* Van Liew.

Where a justice of the peace, after rendering a judgment in favor of the plaintiff, by mistake entered the same in his docket as a judgment in favor of the *defendant*, and a transcript of such judgment being filed and docketed in the county clerk's office, the plaintiff was compelled to pay the judgment; *Held* that an action could be maintained by the latter, against the justice, as for an act of ministerial negligence and carelessness by which the plaintiff had been directly injured.

Such a case does not fall within the rule of judicial impunity for acts done by a judicial officer in the trial of causes and rendition of judgments; it being settled that the act of entering the judgment in the docket, by a justice, is a ministerial act, and is no part of the judicial function of rendering the judgment.

Where a justice swore that from the evidence before him in a case he "*found*

Christopher *v.* Van Liew.

*his judgment* against the defendant and in favor of the plaintiff, for the sum of, &c., but upon entering *said judgment* in his docket he by mistake inserted the name of the defendant in the place of that of the plaintiff;" *Held* that this was to be understood as an averment that the justice had reduced his judgment to form, by his official act, and then made the mistake in entering the judgment so formed, upon his docket; and that the error was ministerial.

*Held also,* that the justice had the right to correct such a mistake in his docket, the moment he discovered it; the error being merely clerical.

A promise by a justice of the peace, who has by his own negligence and carelessness entered an erroneous judgment upon his docket, in favor of the defendant instead of the plaintiff, that if the plaintiff will make a motion in the county court to set aside the erroneous judgment, or the execution issued thereon, he will pay all the damages growing out of his mistake, in case the execution shall not be set aside, is not against public policy, and an action will lie upon it.

A PPEAL by the plaintiff from a judgment of the county court of Seneca county, reversing the judgment of a justice of the peace.

In 1865 the defendant was an acting justice of the peace of the town of Ovid, Seneca county. The plaintiff, Daniel Christopher, brought suit against one Samuel Smith for house rent, money lent and property sold, before this defendant, as justice. Samuel Smith appeared and put in a defense, to wit, for work, &c. Each party was sworn as to the correctness of his account, and it appears the justice took four days to decide. The justice was sworn in the subsequent proceedings instituted to set aside the execution issued on said judgment, and says, "that from the evidence in the case *he formed his judgment* against the defendant, (Smith,) and in favor of the plaintiff, (Christopher,) for the sum of $37.13; but upon entering said judgment in his docket, made a mistake," &c. Such mistake consisted in entering judgment in favor of the defendant, instead of the plaintiff, in that suit.

Before twenty days had expired from the rendering of judgment, the justice (this defendant) notified Christopher that he had rendered judgment in his favor for $37.13. He also informed the constable, who was sent by Chris-

topher for an execution, within the same time, that he had rendered a judgment in favor of Christopher for $37.13. The defendant being informed " that he had no right to correct the mistake," on the 27th of October, 1865, some forty-one days after the entry of judgment, gave a transcript of the judgment as it appeared on his docket, upon filing which transcript in the county clerk's office a judgment was docketed, and an execution issued thereon, against the plaintiff. This execution caused the first intimation Christopher had received that all was not right. He (Christopher) thereupon had an interview with the justice, (this defendant,) and it resulted in the defendant telling him to get Donaldson, an attorney, and see what could be done in the premises, and promised if he (Christopher) got beaten in the proceedings, he would make him whole, &c. Both Christopher and the justice saw and talked with Donaldson; proceedings were had in the county court of Seneca county to set aside the execution, &c. The defendant made an affidavit, and the result was Christopher did get beaten; he lost his claim against Smith, had to pay the judgment against himself, and paid out more money on account of the motion, and was put to more expense. Upon this promise, so made under the circumstances, this suit was commenced in justice's court, tried before a jury, and resulted in a judgment in favor of Christopher for $100.28 damages and costs. The county court of Seneca county reversed the judgment rendered in justice's court. From that judgment of reversal the plaintiff appealed to this court.

*Wm. V. Bruyn,* for the appellant.

I. It is not claimed that there was any fraud on the part of the justice, in the case of *Christopher* v. *Smith,* or on the part of Smith, the defendant in that suit. But we do claim that by the gross blundering and inexcusable carelessness of the justice, (this respondent,) he is liable; they having

occurred *not in his judicial* action, but in the course of his *ministerial acts*, and that without any promise on the part of the defendant, he would have been liable for the damages actually occasioned. 1. The act of the justice in misleading the plaintiff as to the true entry on his docket, also misleading the constable sent by Christopher for an execution, cannot be considered as *judicial* acts, and are in no wise excusable except upon the payment of the damages occasioned thereby. The plaintiff thereby lost his right to appeal. 2. The "forming of his judgment against Smith, and in favor of Christopher, for $37.13," determined, doubtless, by adding up the items of account on either side and striking the balance, was clearly a judicial act; but the entry in his docket, of that determination, was purely a ministerial act, and the entry of judgment against Christopher, instead of in his favor, was a ministerial, and not judicial error. The statute is "directory, merely," and "judgment need not be entered in the docket within four days; it is good if entered there at any time after." (6 *Hill*, 38. 2 *Comst.* 134.) 3. The justice should have corrected his docket upon discovering the error. He had the right to do so. (1 *Cowen's Treatise*, 383, 3d ed. 9 *Wend.* 298.) The statute being "directory, merely," (2 *Comst.* 134,) suppose he had discovered his mistake the instant after transcribing it into his docket, before the ink was dry, could he not have altered or changed it? If then, why not after, so soon as discovered? 4. The mistake was a ministerial error, prejudicial to the plaintiff, and the same was perpetuated by the transcript, after the knowledge of the existence of the error. He certainly could and should have refused to certify the transcript from his docket, for the simple reason that his docket did not represent his decison, his judgment. Had this been done, Christopher's damages would have been materially diminished. Who could have harmed him for such a refusal, for such reasons?

Christopher *v.* Van Liew.

II. All these considerations pressing upon the mind and conscience of the defendant, when he learns by the execution against Christopher, in the sheriff's hands, what he has done, feeling that it is all the result of his mistake, his blunder and his fault, he enters into the contract, which is the foundation of this suit. 1. The consideration for such agreement was ample and sufficient. In consequence of it the plaintiff was put to additional costs and trouble. " So if the party promised suffers any detriment, that is a sufficient consideration, although the party promising does not receive any benefit." (1 *Wait's L. and Pr.* 86.) The fact that the plaintiff had been injured by the carelessness and gross blunder of the defendant would have been sufficient of itself. 2. This contract was not void because against public policy. Neither was it void for maintenance ; there was no officious intermeddling by the defendant. Nor was it void for champerty ; the defendant was not to participate in the profits resulting from a successful termination of the motion.

III. The learned county judge raises a new objection not raised in the court below by counsel for the defendant. Had the objection been taken on the trial that Donaldson was the plaintiff's counsel, it would have appeared more clearly that he was the man selected by the defendant to institute the proceedings. He was the agent of the defendant, and for aught that appears, the defendant directed him when to stop. Christopher certainly did not, but on the contrary, supposed the motion had been argued, and that all was done that could be done. There is no evidence that the motion was not argued. It is easy to conceive why the motion was not pressed in the county court. That court has no jurisdiction, except appellate. How easy it would have been to amend the pleadings, had the counsel made the discovery on the trial, which the county judge seems to have made, and to which he alludes.

IV. All the objections made by counsel as to the proof

of the proceedings in the suit before the defendant, as a justice, were cured by the failure of the defendant to pro-duce his docket and papers on the trial, in pursuance of the notice served on him January 17, 1867, the day before the first adjourned day. " A notice to produce a paper need be given but once, and if once regularly given, the party will be bound to produce on the trial, whenever it may be." (*Jackson* v. *Shearman*, 6 *John.* 19.) " And the notice, properly given in a justice's court, will be sufficient, even if the cause is removed to the county court, by appeal, and even tried there." (4 *Wend.* 63. 19 *John.* 337.) 1. Supposing the defendant did remove to the State of Michigan after the notice was served on him, and pending the suit, the defendant appeared by attorney on the trial, and the attorney should have produced them. 2. The statute requiring a justice, when he leaves a town, to file his docket, &c., with the town clerk, is directory, merely; and if they were there, it was as easy for the attorney for the defendant to bring them from the clerk's office, as for the plaintiff. 3. Because the defendant removed from the State during the pendency of the trial, cannot change the rule. If so, a simple change of residence might give the party changing a decided advantage. 4. The defendant was present on every adjourned day except the last; the motion to adjourn was on his behalf; and the evidence is not at all satisfactory that he had moved away.

V. For the foregoing reasons the judgment of the county court should be reversed, and that of the justice's court affirmed.

*John E. Seeley,* for the respondent.

I. It seems to be conceded that where a justice of the peace has jurisdiction, but errs in exercising it, he is not liable in an action for such error or mistake. (*Butler* v. *Potter*, 17 *John.* 145.) Where he has jurisdiction, an error of judgment does not subject him to an action. He is enti-

Christopher *v.* Van Liew.

tled to the same protection as judges of courts of record. (*Horton* v. *Auchmoody*, 7 *Wend*. 200. *Hoose* v. *Sherrill*, 16 *Wend*. 33. *Yates* v. *Lansing*, 5 *John*. 282. *Weaver* v. *Devendorf*, 3 *Denio*, 117.) Justice Beardsley thus broadly states the doctrine at page 120 of the latter case : "But I prefer to place the decision on the broad ground that no public officer is responsible, in a civil suit, for a *judicial determination*, however erroneous it may be, and however malicious the motive which produced it. Such acts, when corrupt, may be punished criminally, but the law will not allow malice and corruption to be charged in a civil suit, against such an officer for what he does in the performance of a *judicial duty*."

II. But the plaintiff's counsel attempts to show that there is a distinction between deciding a case submitted to the justice, and entering that decision upon the docket when it is made ; that if any error occurred while doing the first, it was a judicial error, and if while entering the decision on the docket, it was a ministerial error. That for the former he is not liable, while for the latter he is liable. It seems to me that the formation of the decision in the mind of the justice, and entering it upon the minutes by him, are and must be presumed to be concurrent acts. It will hardly answer to insist upon such a subtle distinction, and contend for its application to courts of justices of the peace. In *Stephens* v. *Santee*, (51 *Barb*. 543,) Justice Johnson says : "The decision must be evidenced by some official act. A decision in the mind of the justice, unless it is entered in the docket, or in the minutes of the trial, is of no avail whatever. It is not a legal rendering of judgment, and will not constitute a judgment, in law." But the complaint in this case makes no such distinction. It charges that the defendant wrongfully and by mistake entered a judgment against the plaintiff for about $38, when he should in justice and equity have rendered the judgment for the same amount

in favor of the plaintiff and against Samuel Smith. The error complained of in the complaint is clearly a *judicial error*. The complaint does not state a cause of action. Even if a cause of action were made out by the evidence, the evidence having all been received under objection, the plaintiff was not entitled to recover.

III. The proofs show nothing else than a judicial error. There is no proof that the justice ever announced any decision contrary to the judgment entered on his docket, or ever made any entry in his minutes, or in any other place, different from the judgment upon the docket.

Conceding, for the purpose of the argument, as is intimated in 6 *Hill*, 41, that the mere transcribing of the judgment into the docket is a ministerial act, and for which the justice is liable, still, in order to charge a justice for an error in transcribing a judgment into his docket, it must appear that a judgment in some form was rendered, either by announcing it in open court, or by entering it upon his minutes. Until one of these acts is performed there can be no judgment.

The mere formation of a conclusion in the mind is not the rendition of a judgment. We can know what the judicial determination of a justice is only from the judgment he renders. The evidence of the mental purpose of Van Liew to render a judgment for Christopher, cannot be shown. His intention is to be inferred only from his acts. (51 *Barb.* 532.) "The evidence of a voter as to his mental purpose in depositing the ballot is not admissible; but his intention is to be inferred from his acts." (*People* v. *Saxton*, 22 *N. Y. Rep.* 309.)

IV. The county court properly reversed the judgment of the justice, because the proof of the judgment rendered by Van Liew was improperly received. His docket should have been produced and proved. (*White & Hall* v. *Hawn*, 5 *John.* 351. 3 *R. S.* 459, § 192, *5th ed.*) But Christopher claims that he served Van Liew with a notice to produce

Christopher *v.* Van Liew.

his docket on the trial, and the defendant not having pro-
duced it, that he had a right to give parol evidence of its
contents. The reply to that was that Van Liew had moved
out of the State, and the statute required that he should
deposit his docket in the town clerk's office. (3 *R. S.*
458, § 184, *5th ed.*) We are to presume it was so deposited.
The plaintiff knew he had removed from the State. He
had not laid the foundation for parol proof of the judg-
ment. The statute requires the justice of the peace, in
case he removes out of the town in which he was elected,
either before or after his term of office expires, to deposit
with the town clerk of such town all books and papers in
the custody of such justice, relating to any cause or mat-
ter which may have been heard by him, or relating to any
proceeding or cause which shall have been commenced
before him. (3 *R. S.* 458, § 184, *5th ed.* 2 *id.* 271, § 252,
*2d ed.*) No evidence was offered by the plaintiff to show
that the docket of the defendant was not on deposit with
the town clerk, as the statute requires. We must presume
it to be there. Where the statute requires an officer to
perform certain duties, the law will presume that he has
done his duty. (*Hilts* v. *Colvin,* 14 *John.* 182.) There was,
then, no foundation laid for the parol evidence of the
judgment, and it was therefore improperly received.

V. It is claimed that the defendant had no right to give
a transcript of the judgment which he had rendered
against the plaintiff, to Samuel Smith. The answer is,
that having rendered a judgment in favor of Smith he
could not withhold the transcript of judgment when de-
manded. It was a right given by statute to Smith to have
a transcript of the judgment which he might docket in
the clerk's office of the county where the judgment was
rendered. (*Code,* § 63.) The plaintiff seems to act on the
principle that the justice had the power to correct his own
judgment, and knowing that it was a mistake, he acted
wrongfully in giving a transcript. The justice had no

power to alter his own judgment when once rendered. (*See People ex rel. Phelps* v. *Delaware Com. Pleas,* 18 *Wend.* 558.) And it would be erroneous. and unjust to say that he acted wrongfully in doing what the statute required. If there was a mistake, it could have been reviewed by appeal in the way provided by statute.

VI. The transcript of the judgment was improperly admitted, the certificate being imperfect; but being admitted, Christopher was estopped from contradicting it. It was not admissible for him to show it was a mistake. The admissions of Van Liew, or even the affidavit of Van Liew, that he had made a mistake, could not be received to establish that fact. (*See* 22 *N. Y. Rep.* 309, *above cited.*) The judgments of courts of justices of the peace cannot be corrected or changed in this manner. Mr. Van Liew is not the first justice of the peace who has admitted that he has made a mistake and rendered judgment for the wrong party. Every magistrate who has had much experience in litigation, must have seen his mistakes and admitted them; but he did not thereby render himself liable, in an action, for such mistake.

VII. The plaintiff said in the court below that he relied mainly upon the agreement made between Van Liew and Christopher for a reversal of the judgment. Mr. Van Liew said to Christopher, "You go on and do the best you can towards getting it reversed, and if you get beat in it I will make you whole; will pay the amount of the judgment, and amount of the debt and costs." This agreement, if ever made, was void, being against public policy, also void for maintenance, and was champertous. (26 *How.* 213.  22 *Wend.* 406.  6 *Cowen,* 431.) Further, if this agreement is held valid and binding, the appellant does not show that he had performed his part of it. The motion was never in fact made, by Christopher's counsel; only notice was given by Christopher's counsel, but at the time appointed he did not appear. An order was entered

upon Christopher's default, "denied, with $7 costs of opposing, and without prejudice to defendant's right to renew this motion." If he, Christopher, relied upon such a contract, he ought at least to show that he had in good faith attempted to get the judgment set aside, before he claims to recover on this absurd contract.

· VIII. The position of the appellant, that not having known the mistake until after the time to appeal had expired, he could have no relief except to sue the justice, was erroneous. He knew of the mistake before he paid the judgment. If the judgment was obtained by fraud or mistake, he had relief against it in equity. (*Huggins* v. *King*, 3 *Barb.* 616. *Farrington* v. *Bullard*, 40 *id.* 517. *White* v. *Merritt*, 3 *Seld.* 352.)

IX. There was no cause of action stated in the complaint. There was not sufficient evidence to sustain the action. The motion for a nonsuit was clearly right and should have been granted. The decision of the county judge reversing the judgment should be affirmed.

*By the Court,* JOHNSON, J. The statute requires a justice of the peace, after the trial of an action before him, to "render judgment," and "enter the same in his docket" within certain prescribed times. (2 *R. S.* 247, § 124.) The action, in the case which forms the subject of this action, was tried before the defendant as a justice, and he afterwards, and within the proper time, adjudged and determined in some manner, that the plaintiff was entitled to a judgment against the defendant, in such action, for the sum of $37.13 damages, and $4.06 costs. But instead of entering that judgment upon his docket, the justice by mistake reversed the parties, and entered a judgment for the same amount in the defendant's favor, against the plaintiff. This mistake was not noticed by the justice, at the time, and he informed the plaintiff, within a short time thereafter, that he had rendered judgment in his

favor. The defendant in the action called afterwards upon the justice, and it was then discovered that the judgment had been entered upon the docket in the defendant's favor. The defendant thereupon demanded a transcript of the justice, and he supposing he had no right to correct his mistake, gave the defendant a transcript of the judgment, as docketed, and the same was duly filed and docketed in the office of the county clerk of the proper county. This mistake did not come to the knowledge of the plaintiff until it was too late to appeal, and he was compelled to pay the judgment, upon execution issued thereon.

It was certainly an act of gross carelessness on the part the defendant, as such justice, to enter the judgment in his docket in favor of the party against whom it had been rendered by him. And this carelessness and negligence has been the direct cause of injury and damage to the plaintiff. But whether the defendant, as justice, is liable in an action for such negligence, perhaps is not entirely free from doubt. It is claimed, on his part, that it falls within the rule of judicial impunity for acts by a judicial officer, in the trial of causes and rendition of judgments. It has been held that the act of entering the judgment in the docket, by the justice, was a mere ministerial act, and was no part of the judicial function of rendering the judgment. (*Hall* v. *Tuttle*, 6 *Hill*, 38. *Sibley* v. *Howard*, 3 *Denio*, 72.) This seems to be in accordance with the statute, which evidently contemplates that the judgment shall be first rendered by the justice, and then entered in his docket. The entry of the judgment in the docket when rendered, is no more a judicial act than that of issuing an execution after such judgment has been rendered and docketed. Each is alike ministerial in its character.

Should a justice issue to a constable an execution, in favor of the defendant, against a plaintiff, upon a judgment in favor of the latter against the former, and thus

Christopher *v.* Van Liew.

cause the same to be collected from the wrong party, I suppose there can be no doubt that he would be liable to the injured party. In such a case there would be no judgment to support the execution, and the act would be wholly without jurisdiction. The act here would seem to partake of the same character. A different judgment was entered in the docket from the one actually rendered by the justice. He must enter the judgment rendered by him, and has no power or authority to enter any other.

There can be no serious doubt, I think, that had the defendant entered the judgment in his docket as it was in fact formed and rendered by him, in the plaintiff's favor, and in making out a transcript of that judgment, to be filed in the county clerk's office, and there docketed as a judgment of the county court, made a mistake, and transposed the names, so that it should be docketed as a judgment in favor of the other party, it would have been a wrong for which an action would lie, after such judgment had been enforced by the other party.

The mistake and wrong, here, are of a similar character to that above supposed. Both are, I think, ministerial, and not judicial, in their character.

It is claimed in behalf of the defendant, that he never rendered any other judgment in the action than the one entered in his docket. This court held, in *Stephens* v. *Santee*, (51 *Barb.* 532,) that a decision in the mind of the justice, merely, without being evidenced by any official act whatever, was not a rendering of a judgment, within the meaning of the statute. That before a judgment can be rendered, there must be some official action upon it, other than a mere operation of the mind. We also held in that case, that a judgment was not completed, so that it could be enforced by execution, until it was entered in the docket. This, however, does not affect the question as to whether the entry in the docket is a ministerial act, or otherwise. The county judge is, I think, clearly mis-

taken in the assumption that the proof fails to show that the defendant decided the action in the plaintiff's favor, and that he was entitled to judgment.

There is no dispute about the facts in this case. We have the defendant's statement of the facts, under oath. In his affidavit made for the purpose of a motion to set aside the execution issued upon the transcript of the judgment as filed and docketed, he says that "deponent, from the evidence in the case, *formed his judgment*, against the defendant and in favor of the plaintiff, for the sum of $37.13, but upon entering *said judgment* in his docket, he by mistake inserted the name of the defendant in the place of that of the plaintiff." Here we have the fact from the defendant himself, that he "formed his judgment," but that in entering "*said* judgment" in his docket he made the mistake. As I understand this, he had reduced his judgment to form by his official act, and then made the mistake in entering the judgment so formed, upon his docket. Upon this view of the case, I am of the opinion that the defendant is liable as for an act of ministerial negligence and carelessness, by which another has been directly injured. It is clear, I think, that the justice had the right to correct such a mistake in his docket, the moment he discovered it. He has no right to correct any error or mistake in making up or in rendering his judgment, after it has been completed by entering it in the docket as rendered; but when the mistake is in the entry, merely, so that the judgment entered does not conform to the one actually rendered, then the entry may be corrected, to make the judgment, as entered upon the docket, conform to that actually rendered. A mistake of that kind is merely clerical, and may be corrected. The defendant not only neglected to correct his mistake when he discovered it, but followed it up, and placed it beyond his power to make a correction, by giving a transcript,

Christopher *v.* Van Liew.

and thus causing it to be made the judgment of the county court.

It is perhaps unnecessary to a determination of this case, to hold that the action could be maintained upon the carelessness and negligence in making the entry upon the docket, because I .am also of opinion that the action will lie upon the promise. This promise is in no respect against public policy, as I conceive. The defendant had not erred in rendering the judgment. The judgment "formed" or rendered by him was the correct one. He had entered a judgment upon his docket which he had never rendered. This was gross carelessness, and operated in the end to the plaintiff's injury. The consummation of this injury the defendant thought might be prevented by a motion to the county court to set aside the execution which had been issued. He therefore promised the plaintiff that if he would make the motion to set aside the erroneous judgment or execution, in the county court, he would pay all the damages growing out of his mistake, in case the execution should not be set aside. In pursuance of this promise the motion was made. It failed, as any lawyer would have known it must, as there was nothing in the county court by which the mistake could be rectified and the error corrected. There was nothing there to correct by. But this is of no consequence in respect to the agreement. The plaintiff complied with its terms, on his part. He performed the condition, and the event on which the defendant agreed to become liable happened. I do not see, therefore, why he is not liable upon his promise, even conceding there was no liability on the other ground. The plaintiff employed and paid counsel who made the motion, and detriment thereby accrued to him at the instance of the other party. This is a good consideration to uphold a promise. It is said in the opinion of the county judge, that the motion 'to set aside the execution was not made by the

Christopher *v.* Van Liew.

plaintiff, but was dismissed by reason of the plaintiff's non-appearance to make it in pursuance of his notice. I think, upon the agreement, the plaintiff was bound to have the motion brought to a hearing, in order to fulfill on his part. But, upon the evidence, it seems to me the jury were authorized to find that the motion was in fact made and denied. It is evident from the testimony in the case, that the parties so understood it. In addition to this, the motion papers in the county court were produced, which were on file, with the indorsement thereon in the hand-writing of the county judge, " denied with $7 costs of opposing, and without prejudice to defendant's right to renew this motion."

It seems that an order had been entered dismissing the motion for the default of the plaintiff in not appearing. But upon the whole evidence the jury might well have found, as the fact probably was, that the default had been waived, or opened, and the motion heard. On this ground, also, I think a good cause of action was established.

The judgment of the county court should therefore be reversed, and that of the justice affirmed.

[MONROE GENERAL TERM, December 6, 1869. *E. D. Smith, J. C. Smith* and *Johnson,* Justices.]