307 So.2d 855 (1975)
Janice BECKER, C. T. A. of the Estate of Bernard G. King, Deceased, Appellant,
v.
Dorothy D. KING, Appellee.
No. 73-793.
District Court of Appeal of Florida, Fourth District.
January 17, 1975.
Rehearing Denied March 5, 1975.
*857 Leonard Frishman, Law Offices of Leonard Frishman, P.A., and David R. Knoll, Coral Gables, for appellant.
Davis W. Duke, Jr., McCune, Hiaasen, Crum, Ferris & Gardner, Fort Lauderdale, for appellee.
COWART, JOE A., Jr., Associate Judge.
After two days of testimony in a final hearing in a suit for dissolution of marriage both sides rested and made final arguments. Many issues relating to the dissolution, alimony, child support, life insurance and property ownership and division were involved. Both counsel agreed that it would be proper at that time for the court to make a finding as to the dissolution of the marriage by a partial final judgment and to take the other issues under advisement. On January 22, 1973, the trial judge signed a "partial final judgment" dissolving the marriage, giving the wife custody of the two children with visitation rights "to be subsequently determined by the order of this Court", continuing in force a prior temporary support order and reserving jurisdiction over all other matters in the complaint, including attorneys' fees and costs "for subsequent determination by this Court". On March 5, 1973, the trial judge and both trial counsel held a conference and further discussed the issues remaining for decision. On March 7, 1973, the trial judge made final decisions as to those matters and communicated them to the attorneys for both parties requesting that a formal written final judgment be prepared and submitted for his signature. This was not done. The husband-father died on March 24, 1973. On May 24, 1973, the trial judge entered a partial final judgment of dissolution of marriage nunc pro tunc as of January 22, 1973, and again on June 5, 1973, entered an amended partial final judgment of dissolution of marriage nunc pro tunc as of January 22, 1973. The judgment entered on May 24, 1973, accurately set forth the decisions orally announced by the trial judge on March 5th and 7th, 1973, except the written judgment omitted to specify the source of funds to make certain ordered payments. The amended judgment entered on June 5, 1973, specified the sources of those funds. The administratrix C.T.A. of the estate of the deceased husband-father filed notice of appeal on June 23, 1973.
The essence of this appeal is the contention that because the husband died before the two nunc pro tunc final judgments were signed, those judgments are invalid, especially because the court had previously dissolved the marriage and also because *858 the court did not order a substitution of parties and did not give notice to the estate of the decedent before entry of those judgments.
The English Statute of 17 Charles II, Chapter 8 (made perpetual by 1 JAC. II, Chapter 17, Section 5) specifically provides that "in all actions personal, real or mixed, the death of either party between the verdict and the judgment shall not hereafter be alleged for error ...". That statute is of force in this state by virtue of Section 2.01, F.S., but the power of the court to enter judgments nunc pro tunc does not depend upon this statute. Under the maxim, "Actus Curiae neminem gravabit,"[1] courts from very ancient times have exercised the inherent power of entering judgments nunc pro tunc in order that the rights of a litigant, who is himself not at fault, should not be impaired or lost. A specific application of this maxim is stated in Bacon's Abridgment, title "Abatement F": "If the plaintiff or defendant die whilst the Court are considering of their judgment, or after a special verdict or special case and pending the time for argument or for advising thereon  they will permit the judgment to be entered up as of the term in which it regularly might have been."
Once a court of record has jurisdiction of the cause and the parties and all the evidence has been presented, the cause is then ripe for judgment and the court is not thereafter deprived, by the death of a party, of its inherent power to render a decision or judgment and may do so in the interest of justice by a judgment nunc pro tunc as of the time of submission.[2]
A purely divorce suit is sometimes made an exception to this general principle of law permitting rendition and entry of a nunc pro tunc judgment after death because, it is said, the death itself has already terminated the marriage relationship.[3] If so, the reason for this exception does not apply in this case because the marriage was not ended by death but by the written partial final judgment of January 22, 1973, and the matters involved in the appealed judgment relate only to matters collateral to, and made necessary and appropriate for legal decision by, the adjudication of dissolution.
The time for appeal under F.A.R. Rule 3.2, subd. b is calculated from the rendition of the judgment appealed and "rendition" is defined in F.A.R. Rule 1.3 to mean the judgment has been reduced to writing, signed and recorded or filed. However essential a filed writing is to an appeal, a judgment may be valid although not in such final form as is required for appeal purposes. Aside from its definition in the Florida Appellate Rules, rendition of a judgment generally refers to the judicial act of the court in giving, returning, pronouncing, or announcing, orally or in writing, its conclusions and decision on the matter submitted to it for adjudication,[4] and is distinct from the signing of a subsequent *859 formal judgment and from the later recording[5] or filing of the writing[6] or the entry of judgment in the minutes of the court.[7] Aside from the effect of a statute or court rule requiring the judgment to be written for particular purposes,[8] a judgment exists as such when it is thus rendered[9] and is valid and binding as between the parties and their privies, although the only competent evidence of such act is a memorial or record in the form of a written and signed judgment or a clerk's minute book entry.
Nunc pro tunc means "now for then" and when applied to the entry of a legal order or judgment it normally does not refer to a new or fresh (de novo) decision, as when a decision is made after the death of a party, but relates to a ruling or action actually previously made or done but concerning which for some reason the record thereof is defective or omitted.[10] The later record making does not itself have a retroactive effect but it constitutes the later evidence of a prior effectual act.
Therefore, the first nunc pro tunc judgment was not only a proper action of the court to prevent the court's delay in entering a written judgment until after the husband's death from prejudicing the just rights of the wife and children by abatement but it was also a proper use of a nunc pro tunc order to establish a final and appealable written record of the court's previous decision orally rendered. To correct the form of the first nunc pro tunc judgment was also a proper use of the second nunc pro tunc  "to make the record speak the truth".
The cause having been submitted for final decision, the parties were not entitled to be heard further, and, accordingly, the court was not required to give them notice before announcing its original oral judgment nor before signing the record-making first nunc pro tunc judgment nor before executing the second or record-correcting nunc pro tunc judgment.[11] The burden was not on the trial judge but on the successors or representatives of the deceased, or other party desiring such action, to file a suggestion of death and motion for substitution and notice of hearing under R.C.P. Rule 1.260. Although appellant, as administratrix, has never complied with this rule, we denied a motion to dismiss this appeal on that ground in the interest of due process and fair play. We have also considered this as a direct attack upon the judgments below avoiding, without decision, questions relating to collateral attack.[12] However, in this appeal the administratrix, who has been accorded the privy status of a proper successor of the decedent, should not be heard to complain of her own default in not becoming a nominal party and in not receiving notice and hearing to which the decedent would not, if alive, have been entitled.
Although counsel of record for both parties agreed for the court to enter the first partial final judgment of January *860 22, 1973, and consented[13] to the later determination of all other matters in issue appellant now contends that by entry of that judgment the trial court lost jurisdiction to make further decisions on the property rights of the parties citing Sistrunk v. Sistrunk, 235 So.2d 53 (4 D.C.A.Fla. 1970). Sistrunk involved a petition to modify a final judgment fourteen months after its entry. This court viewed that petition as an attempt to modify property rights previously adjudicated and reversed an order authorizing the wife to sell the husband's interest in stock of which he had, by operation of law, become a tenant in common by virtue of the divorce itself, although the trial court had specifically provided the final judgment did not adjudicate the property rights of the parties in the stock. Sistrunk has no application to the question of the authority of a court to make an original decision or an appropriate record of its decision.
Except perhaps as to summary judgments,[14] trial courts regularly enter "partial", "split" or "divisible" final judgments, and Sistrunk does not hold trial courts have no jurisdiction to make a piecemeal final decision in complex cases where it is in the interest of the litigants. In domestic relation cases it is not uncommon or unauthorized practice to enter a judgment dissolving the marriage and to later determine the other ancillary issues. See Klarish v. Klarish, 296 So.2d 497 (3 D.C.A.Fla. 1974).
As security for the support of his minor children the trial judge is empowered to require a divorced father maintain life insurance on his life for the benefit of his children at least for such time as he is responsible for their support. Bosem v. Bosem, 279 So.2d 863 (Fla.S.Ct. 1973). We have carefully considered the other many issues presented and find them without merit. We further find that there is competent substantial evidence to support the appealed judgment which was well within the discretion of the trial court, and it is hereby
Affirmed.
CROSS and MAGER, JJ., concur.
NOTES
[1] An act of the court should prejudice no one. Where any delay in a suit is caused by the court neither party should suffer for it.
[2] See generally 49 C.J.S. Judgments § 29a, at page 71, and § 118b, at page 249, and the cases collected in the Annotation entitled: Power to enter judgment nunc pro tunc after death of party, 3 A.L.R. 1403, especially III.e., After rendering of decision, but before entry of judgment, supplemented at 68 A.L.R. 261.
[3] See Sahler v. Sahler, 154 Fla. 206, 17 So.2d 105 (1944); McKendree v. McKendree, 139 So.2d 173 (1 D.C.A.Fla. 1962), and compare Taylor v. Wells, 265 So.2d 402 (1 D.C.A. Fla. 1972), cert. den., 273 So.2d 767 (Fla. S.Ct. 1973). See also the annotation at 104 A.L.R. 654, Effect of Death of party to divorce suit before final decree, especially IV., Death before actual entry of decree  propriety of decree nunc pro tunc, and 19 A.L.R.3d 648 entitled "Entering judgment or decree of divorce nunc pro tunc". Note Section 46.021, F.S.
[4] Ellis v. State (1930) 100 Fla. 27, 129 So. 106, 69 A.L.R. 783 cited in 19 Fla.Jur., page 23, Judgments and Decrees, Sec. 1, note 5.
[5] Section 28.29, F.S.
[6] Section 28.13, F.S.
[7] Section 28.212, F.S.
[8] See R.Cr.P. Rule 3.670, relating to judgments of criminal conviction or acquittal, and F.A.R. Rule 3.1, relating to appeals.
[9] Ellis v. State supra; Tilton v. Horton (1931), 103 Fla. 497, 137 So. 801, reh. den., 139 So. 142; State ex rel. Watt & Sinclair v. Bird (1937), 128 Fla. 552, 175 So. 858.
[10] See generally 19 Fla.Jur., page 77, Judgments and Decrees, sec. 47, et seq.
[11] Although it is better practice to give parties notice and opportunity to be heard generally a court should be able to take action, without notice, to correct and conform its own records to actual judicial action taken to the certain knowledge of the court including not only clerical error or misprision but omissions from orders and judgments due to oversight, inadvertence or mistake of the court. See Annotation: "Necessity of notice of application or intention to correct error in judgment entry" at 14 A.L.R.2d 224.
[12] See Annotation "Collateral attack on domestic nunc pro tunc judgment" at 70 A.L.R. 2d 1131.
[13] See Farr v. Farr, 249 So.2d 761 (3 D.C.A. Fla. 1971).
[14] See Fontainebleau Hotel Corp. v. Young, 162 So.2d 303 (3 D.C.A.Fla. 1964).