H. PAUL BAKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baker v. Commissioner
Docket No. 1144-76.
United States Tax Court
T.C. Memo 1978-103; 1978 Tax Ct. Memo LEXIS 412; 37 T.C.M. (CCH) 475; T.C.M. (RIA) 780103; March 15, 1978, Filed *412 Held, petitioner is not entitled to a deduction as alimony of payments made to his former wife in 1972. Petitioner failed to prove that the payments were made under a decree of divorce or a written instrument incident to such divorce, sec. 71(a)(1), I.R.C. 1954, or under a decree requiring him to make the payments for the support and maintenance of his former wife, sec. 71(a)(3), I.R.C. 1954. P.D. Aiken, for the petitioner. Alan Summers, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency in petitioner's income tax for the year 1972 in the amount of $938.15. The issue for decision is whether petitioner is entitled to deduct as alimony $2,500 of payments made by him to his former wife in 1972 after dissolution of the marriage. FINDINGS OF FACT H. Paul Baker, petitioner herein, was and is a judge of the Eleventh Judicial Circuit, Dade County, Fla., Criminal Division, and resided in Miami, Fla., at the time the petition in this action was filed. Petitioner timely filed an individual income tax return for the year 1972 *414 with the Internal Revenue Service. Petitioner and Monda Baker were married in 1958 and have four children. In 1970 petitioner instituted an action for divorce from his wife in the Eleventh Judicial Circuit of Dade County, Fla. Modda Baker filed an answer to petitioner's complaint and additionally filed a counterclaim seeking a divorce from petitioner. In her counterclaim Monda Baker asked that she be awarded "temporary and permanent alimony, temporary and permanent child support and temporary and permanent attorney's fees and court costs." The divorce proceedings were protracted and received a good bit of publicity. Upon the death of the presiding judge, the case was assigned to Judge Thomas E. Lee, who had only recently been appointed to the court, sometime in 1972. On August 11, 1972, Judge Lee signed and entered a written order dissolving the marriage. This order contained no other provisions except that the court specifically retained "jurisdiction to determine any remaining problems including but not limited to such matters as alimony and child support and all other property rights." On January 30, 1973, Judge Lee entered a written order designated "Final Judgment, *415 " reciting that the case had come on to be heard before the court for its determinations concerning alimony, child custody and visitation, child support, and related matters. Among other things this order directed H. Paul Baker to pay Monda "rehabilitative alimony in the sum of $750.00 per month for a period of one year from the date hereof," whereupon the requirement for payment shall cease; to pay sums required for insurance on the Cadillac automobile for 1973; and to pay for insurance, taxes, and mortgage payments on the home of the parties, the temporary use and possession of which was given to Monda, for a period of 1 year from the date of the order. Petitioner was also directed to pay to Monda for the maintenance and support of the minor children $400 per month, allocated as $100 per month for each child, until each child reached majority. Monda perfected an appeal from the above "Final Judgment." On April 4, 1973, pursuant to a motion filed by Monda "permitting her to receive the amounts of alimony and support as set forth in the order of this Court of January 30, 1973" pending the appeal, Judge Lee entered a written order granting her motion. The only reference in this *416 motion and order was to the order of January 30, 1973, the "Final Judgment." A document captioned "Amended Final Judgment" bearing a date of April 2, 1973, and bearing the stamped name "Thomas Edison Lee" on the signature line for the circuit judge but not the signature of Judge Lee, was offered as evidence by petitioner over respondent's objection. This document purported to amend the final judgment entered on January 30, 1973, in several respects. It increased the time during which petitioner was required to pay the mortgage payments, insurance and taxes on the home from 1 year to 3 years, but also added a paragraph which read: 6. This Court orders that all monies paid by the husband to the wife from the date of the Order of Dissolution (August 11, 1972) to and including the date that the Final Judgment was entered on January 30, 1973 be deemed to have been paid as temporary alimony. This document was not entered in the minutes of the Clerk of the Court and was not included in the certified record on appeal. The docket sheet for the divorce action cannot be found, and no transcript of a hearing on April 2, 1973, was offered as evidence. Judge Lee had no independent recollection *417 of signing the "Amended Final Judgment." On November 15, 1974, at petitioner's request, Judge Lee wrote a letter to petitioner's counsel which stated that "It is my recollection that the Court ordered the husband to pay the wife $500.00 per month temporary alimony during 1972." This letter was written after Judge Lee had examined the checks paid by petitioner to his wife during 1972. However, Judge Lee had no independent recollection of orally ordering petitioner to pay Monda $500 per month temporary alimony on August 11, 1972. There was no transcript of a hearing at which an oral order was purportedly given, and there is no written order directing petitioner to make these payments during 1972 currently in the case file. Throughout the divorce proceeding after it was assigned to Judge Lee, Monda's attorney filed motions for petitioner to pay amounts for the support of Monda and the children, and Judge Lee admonished petitioner that he still had an obligation to support them. During 1972 Monda received various checks from petitioner totaling in amount $4,290. Of this amount, checks totaling $2,600 were received after August 11, 1972, the date the order of dissolution was entered. *418 The dates and amounts of these checks were as follows: 1. Sept. 24 $500
2. Oct. 30
400
3. Nov. 16
250
4. Dec. 3
300
5. Dec. 7
500
6. Dec. 17
50
7. Dec. 24
100
8. Dec. 31
500
Also during 1972 Monda received $400 per month in the form of dividends on stock in the Enterprise Fund which was owned by petitioner. Petitioner sold this stock on September 8, 1972. On his income tax return for 1972 petitioner claimed a deduction of $2,500 for alimony. In the notice of deficiency respondent disallowed the deduction for the reason that it had not been established that petitioner was entitled to such deduction. OPINION Section 215(a), I.R.C. 1954, [1] allows a deduction to a husband for payments made to his wife within the husband's taxable year if the amounts so paid are includable in the wife's gross income under section 71. Section 71(a) provides, in pertinent part: (1) * * * If a wife is divorced * * * from her husband under a decree of divorce * * * the wife's gross income includes periodic payments (whether or not made at *419 regular intervals) received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce * * *. * * *
(3) * * * If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her * * * under a decree entered after March 1, 1954, requiring the husband to make the payments for her support and maintenance. This paragraph shall not apply if the husband and wife make a single return jointly. Petitioner's argument for deductibility of $2,500 of the payments he made to Monda after the date the order dissolving the marriage was entered, August 11, 1972, through December 31, 1972, is based on his claim that at the time the written order of dissolution was entered Judge Lee orally ordered him to pay Monda $500 per month for her support until such time as the court entered an order determining the property rights of the parties. Petitioner apparently relies on section 71(a)(3), although this is not entirely clear from his brief. While *420 section 71(a)(1) would seem to be determinative of whether payments made to a wife after entry of a decree of divorce or separate maintenance are includable in the gross income of the wife, and thus deductible by the husband, [2] the circumstances here clearly do not meet the provisions of that section. The order dissolving the marriage, entered August 11, 1972, imposed no obligation on petitioner to pay Monda anything at that time, nor was there any written instrument incident to the divorce which imposed such an obligation. In the divorce decree the court simply retained jurisdiction to determine any remaining problems including such matters as alimony and child support. No such determination was made until the final judgment order entered January 30, 1973. However, since both petitioner and respondent approach the issue as though section 71(a)(3) is applicable, we will also consider the question in the light of that section. Section 71(a)(3), quoted above, [3] provides that a wife's income includes periodic payments received by her from her husband under a decree requiring the husband to make the payments *421 for her support and maintenance. Petitioner has the burden of proving that the payments he made to Monda in 1972 after August 11 can be so characterized. We conclude that he has failed to do so. Petitioner relies primarily on his own testimony that at the time the divorce decree was entered Judge Lee ordered him to pay Monda $500 per month for her support. Monda denies knowledge of any such order and testified that she thought petitioner was voluntarily continuing the support for herself and their children he had given her throughout the divorce proceedings; also, that petitioner's payments were increased because the dividends she had previously received from the stock petitioner sold *422 on September 8, 1972, were no longer available to her. It is true that the checks given to Monda after August 11 through December 31, 1972, totaled $2,600, which is just $100 more than $500 per month from August through December. But this does not prove that these payments were made under a "decree""requiring" petitioner to make them for "her" support or maintenance as provided in section 71(a)(3). The checks were made in irregular amounts and at irregular intervals. The first check was dated September 24, 1972, which was 6 weeks after the divorce decree was entered but was only 2 weeks after petitioner sold the stock which had provided Monda with dividend income of $400 per month. We are inclined to believe that these checks were a voluntary continuance of the support petitioner had previously provided for Monda and the children. It is quite possible that Judge Lee would have entered a written order or decree directing petitioner to make specific payments for support had he been asked to do so, but he apparently was never called upon to do so. The evidence indicates that from time to time throughout the divorce proceedings Monda's attorney approached Judge Lee seeking *423 support payments for Monda and the children, but such requests were not formalized. Judge Lee testified that on several occasions he admonished petitioner that he was still obligated to support his family but that he did not recall entering an order directing him to do so. Court reporters were present at many of the hearings on the case and at the hearing on August 11, 1972, but petitioner offered no written evidence in the form of an order, the Clerk's minutes of the proceeding, transcripts of hearings, or otherwise which reflected a decree ordering petitioner to make support payments to Monda. Petitioner offered as evidence to corroborate his testimony a letter written by Judge Lee to petitioner's attorney at petitioner's request dated November 15, 1974, and a document captioned "Amended Final Judgment" dated April 2, 1973. The letter of November 15, 1974, addressed to P. D. Aiken was signed by Judge Lee and, for some reason not explained to this Court, bears a certification of the Clerk of the Circuit Court suggesting that it was a part of the record in the Baker divorce case. In the letter, as quoted in our findings of fact, Judge Lee stated that it was his recollection *424 that he had ordered petitioner to pay Monda $500 per month as temporary alimony during 1972. Judge Lee testified that he wrote the letter at petitioner's request after examining the checks given Monda by petitioner during 1972, but that he had no independent recollection of giving such an order. Under the circumstances, we do not believe the letter is admissible as evidence to prove the entry of a "decree," as required by the statute; but even if it is admissible, we would give it no weight. We also find the document captioned "Amended Final Judgment," offered as petitioner's Exh. 7, to be incompetent as evidence in this case. The document was not signed by Judge Lee, it bears no certificate of the Clerk of the Circuit Court, there is no evidence that a hearing was conducted with respect to amending the final judgment, and there is no evidence that the document was ever entered or intended to be entered as a part of the record in the divorce proceedings. Judge Lee did not specifically recall entering such an order, and Monda denied that it was entered. Furthermore, the record on appeal did not include this document, and the order entered on April 4, 1973, just 2 days after *425 the date on this document, permitting Monda "to receive the amounts of alimony and support as set forth in the order of this Court of January 30, 1973" pending her appeal, makes no reference to an amended final judgment. We also doubt the efficacy of such an order entered nuncprotunc by a State court, even if this one had been entered, to characterize the payments as alimony for Federal tax purposes. In Segal v. Commissioner,36 T.C. 148 (1961), the issue was also whether payments made by the taxpayer to his divorced wife could be deducted as alimony. Nine years after the divorce decree was entered the divorce court entered a nuncprotunc order amending the divorce decree by substituting the word "alimony" wherever the decree mentioned "child support" and declaring that all payments theretofore made under the decree were for payment of alimony. Quoting Daine v. Commissioner,9 T.C. 47, 52 (1947), this Court said: It is our conclusion that a decree of a state court, in so far as it attempts to determine retroactively the status of a husband or wife under section 23(u) and section 22(k) [now sections 215 and 71, respectively, *426 of the Internal Revenue Code of 1954], is ineffective and not binding upon this Court. It is the function of this Court to determine such questions. * * * In affirming this Court, the Court of Appeals for the Second Circuit stated, 168 F. 2d 449, at 451, that although a nuncprotunc order by a State court "may bind the parties in the settlement of their legal rights between themselves, yet the determination of tax consequences is not to be so resolved. * * * Hence, it is clear that the retroactive judgments of state courts do not determine the rights of the Federal Government under its tax laws. * * *" It is our conclusion that petitioner has failed to prove that the payments he made to Monda from August 11, 1972, through December 31, 1972, were either periodic payments imposed on petitioner under a decree of divorce, as required by section 71(a)(1), or received by Monda under a decree requiring petitioner to make the payments for her support or maintenance, as required by section 71(a)(3). Hence, the payments were not includable in Monda's income for 1972 nor deductible by petitioner under section 215. [4]
*427 Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. See Taylor v. Commissioner,55 T.C. 1134↩ (1971).
3. Under Florida law there is no waiting period; a divorce becomes final upon entry of the decree of dissolution. Sec. 61.19, Fla. Stat. Ann.; Galbut v. Garfinkl,340 So. 2d 470 (Fla. 1976). Query, after Aug. 11, 1972, was Monda a wife separated from her husband, which is the circumstance described in sec. 71(a)(3)? And could petitioner and Monda have filed a single return jointly for 1972, the possibility of which is also recognized in sec. 71(a)(3)↩?
4. We have decided this issue as a factual issue because the parties have argued it that way. However, there are several legal issues lurking in the background which might also deny petitioner's right to the deduction which we recognize but need not decide. First, does sec. 71(a)(3) apply to a decree for support after a divorce has become final, or is sec. 71(a)(1) alone applicable? As suggested in fn. 3, the terminology of sec. 71(a)(3) does not relate well to post-divorce status of the parties. See discussion in Korman v. Commissioner,36 T.C. 654 (1961), affd. per curiam 298 F. 2d 444 (2d Cir. 1962). Secondly, is an oral order determining the property rights of the parties to the litigation ineffective unless reduced to writing under Florida law? And, if so, does it qualify as a "decree" within the meaning of sec. 71(a)(3)? Sahler v. Sahler,17 So. 2d 105 (Fla. 1944) held that an oral pronouncement of a decree by a chancellor in a divorce proceeding would not have been effective until it had been reduced to writing, signed by the judge, and recorded in the Chancery Order Book. In accord, see McKendree v.McKendree,139 So. 2d 173 (Fla. App. 1962). And in Barry v. Robson,65 So. 2d 739 (Fla. 1953), it was stated that it was well settled in Florida that an order or judgment is rendered only when it has been entered or recorded in the minutes of the court appearing in the office of the Clerk of the Circuit Court. But see Becker v. King,307 So. 2d 855 (Fla. App. 1975). Sec. 71(a) refers to decrees and written instruments, although "decree" alone is used in sec. 71(a)(3). Since the tax liabilities of both the husband and wife are ultimately determined under sec. 71, it is reasonable to assume that Congress intended that a decree, to qualify under sec. 71(a), must be in writing or otherwise memoralized in writing so there could be no uncertainty about whether the payments called for were alimony or something else. In Sheeley v.Commissioner,59 T.C. 531 (1973), this Court held that an oral agreement by the parties recorded in the transcript of the proceedings did not constitute either a "decree of divorce" or a "written agreement between the parties" within the requirements of sec. 152(e)(2)(A) (which deals with the right of divorced parents to exemptions for the children), because since the major objective of the legislation was to provide certainty, it would subvert the intent of the statute to recognize an oral agreement as the equivalent of a written agreement. While an oral judgment entered by a Florida divorce court might be valid as between the parties, Becker v. King,supra, such a judgment without competent evidence to prove its terms would not seem to serve the objective of sec. 71(a)(3). Compare Clark v. Commissioner,40 T.C. 57 (1963); Healey v. Commissioner, 54 T.C. 1702 (1970). How can this or any other court determine whether such an order requires the husband to make the payments, see Taylor v. Commissioner,supra, for the support or maintenance of the wife, as opposed to the support of the children, as required to fix the tax liabilities of the parties under sec. 71(a)(3)↩?