385 So.2d 961 (1980)
Pearl Marie THRASH
v.
Jimmy Dale THRASH.
No. 51953.
Supreme Court of Mississippi.
July 9, 1980.
James B. Everett, Decatur, for appellant.
Robert N. Brooks, Carthage, for appellee.
Before SMITH, P.J., and BROOM and COFER, JJ.
SMITH, Presiding Justice, for the Court.
Pearl Marie Thrash has appealed from a decree of the Chancery Court of Leake County rejecting her attack upon a decree of that court in which her late husband, Jimmy Dale Thrash, was granted a divorce.
The circumstances of the case are unusual. The original litigation was begun by Pearl Marie Thrash, praying for a divorce from him on the ground of habitual cruel and inhuman treatment. Defendant, Jimmy Dale Thrash, answered and filed a cross-bill in which he prayed for a divorce from Pearl Marie Thrash upon similar grounds.
The case was fully tried, submitted to the chancellor for final decision, and by him taken under advisement.
On March 31, 1978 the chancellor determined all issues on the merits and rendered his decision by written opinion which he signed and filed with the clerk on April 1, 1978. The chancellor found that complainant, Pearl Marie Thrash, was not entitled to a divorce and held that Jimmy Dale Thrash was entitled to a divorce from her upon the grounds set forth in the cross-bill.
The solicitors for the respective parties were informed of the decision and a decree was drafted, approved by both solicitors, and forwarded to the chancellor for signature. This decree was duly received by the chancellor on April 8, 1978 and signed by him on that same date. However, the chancellor dated the decree April 10, 1978, which was a Monday. On April 9, 1978 the chancellor received a telephone call from the solicitor for complainant by whom he was told that Jimmy Dale Thrash had been killed in an accident on Sunday, April 9, 1978.
On May 16, 1978 Pearl Marie Thrash filed a "Suggestion of Death and Motion to Dismiss". The motion was based upon a theory that the decree, although signed on Saturday before Thrash's death, bore date of Monday, a date subsequent thereto, and had not been filed. This motion was heard on March 7, 1979 by a different chancellor. The original chancellor testified that he had intended to file the decree with the clerk, whose office was in a different locality, on Monday, April 10, 1978. The chancellor who presided at the hearing of the "Suggestion of Death and Motion to Dismiss" rejected the motion to dismiss and ordered *962 the decree of divorce theretofore signed by the chancellor to be entered nunc pro tunc, as of its true date of signing, April 8, 1978.
The present appeal does not challenge the decision of the case by the original chancellor on its merits in which Jimmy Dale Thrash was granted a divorce from Pearl Marie Thrash and she was denied a divorce from him. In brief, the position of the appellant is that the decree signed by the chancellor on April 8, 1978 and dated April 10, 1978, was without effect and is a nullity because Jimmy Dale Thrash had died on April 9, 1978 before the decree was filed with the clerk.
In Chapter 7 of Title 11, Mississippi Code Annotated section 11-7-1 (1972) provides:
Provisions applicable to all courts.
All things contained in this chapter, not restricted by their nature or by express provision to particular courts, shall be the rules of decision and proceeding in all courts whatsoever.
In several cases this Court has applied the provisions of the chapter to proceedings in the chancery court, equating the chancellor, as trier of facts, with the jury, which is of course, in the circuit court, the trier of facts. One such case is People's Bank In Liquidation v. Pennington, 137 Miss. 653, 102 So. 386 (1925), which construed section 11-7-125 which provides:
Nonsuit or dismissal  before jury retire from bar.
Every plaintiff desiring to suffer a nonsuit on trial shall be barred therefrom unless he do so before the jury retire to consider of its verdict.
[Mississippi Code Annotated section 11-7-125 (1972)].
In ruling that the statute applied to cases in the chancery court, this Court said:
In the case of Adams v. Commercial Co., 113 Miss. 608, 74 So. 435, it was held that section 802 of the Code of 1906 (section 590, Hemingway's Code), which gives to every plaintiff the right to suffer a nonsuit if he elects to do so, before the jury retire to consider its verdict, is likewise applicable to the right of a complainant in the chancery court, and that a complainant has the right to dismiss his bill at any time before the cause is submitted to the chancellor for a decision upon its merits; that this is an absolute right of the complainant, and no discretion is vested in the chancellor when timely application is made.
(137 Miss. at 674-675, 102 So. at 387).
At the conclusion of the divorce trial, when the case was submitted to the chancellor for a decision on its merits, Pearl Marie Thrash no longer had the prerogative of taking a nonsuit and, of course, at no time did she have the right to nonsuit the cross-bill filed against her by Jimmy Dale Thrash.
Section 11-7-25 of Chapter 7, Title 11, Mississippi Code Annotated (1972) provides, (among other things):
... Where either party shall die between verdict and judgment, such death need not be suggested in abatement, but judgment may be entered as if both parties were living... .
Applying the same reasoning to the above section as this Court has applied to section 11-7-125, Mississippi Code Annotated (1972), in a case such as this, where the case has been fully tried and finally decided on its merits and nothing remains to be done except the entry of a decree, the decree would follow as if both parties were living.
One of the issues in the divorce suit dealt with the custody and support of the minor son of the parties. The question now raised, therefore, is inescapably crucial to the question of whether this child shall take the estate of his deceased father or whether the divorced wife shall take not only half of the estate as an heir but shall also enjoy the valuable rights and privileges which would be accorded her as a surviving widow.
In an annotation appearing in 104 A.L.R. 654, 664 (1936) appears the following:
The general rule, so far as a general rule may be deduced from the few cases falling within this subdivision, is that, if the facts justifying the entry of a decree *963 were adjudicated during the lifetime of the parties to a divorce action, so that a decree was rendered or could or should have been rendered thereon immediately, but for some reason was not entered as such on the judgment record, the death of one of the parties to the action subsequently to the rendition thereof, but before it is in fact entered upon the record, does not prevent the entry of a decree nunc pro tunc to take effect as of a time prior to the death of the party. Re Cook (1888) 77 Cal. 220, 17 P. 923, 19 P. 431, 1 L.R.A. 567, 11 Am.St.Rep. 267; Tikalsky v. Tikalsky (1926) 166 Minn. 468, 208 N.W. 180; Hoyt v. Hoyt (1926) 98 N.J. Eq. 426, 131 A. 127; Rush v. Rush (1896) 97 Tenn. 279. See Schneider v. Grimes (1923) 156 Minn. 25, 193 N.W. 942 (sustaining the entry of a decree nunc pro tunc in so far as it affected property rights); Kimball v. Kimball (1862) 44 N.H. 122, 82 Am.Dec. 194. But if no such final adjudication was made during the lifetime of the parties, a decree nunc pro tunc may not be entered after the death of one of the parties, to take effect as of a prior date. Young v. Young (1901) 165 Mo. 624, 65 S.W. 1016, 88 Am.St.Rep. 440; Swan v. Harrison (1865) 2 Coldw. (Tenn.) 534.
(Emphasis added).
In Berkenfield v. Jacobs, 83 So.2d 265 (Fla. 1955) the Florida Court dealt with a case in which the factual question was significantly analogous to that in the case now under consideration.
In Berkenfield, as here, the wife had sought a divorce from her husband who filed a cross-complaint. Having heard the testimony relative to the issues posed by the pleadings the chancellor decided the case in the husband's favor. A final decree was signed June 21, 1954 and afterwards, between 10:08 and 11:35 of the morning, the husband died in the chancellor's chambers. The decree was filed with the clerk at 10:16 on the morning of that day and recorded the next day. On appeal it was contended by the wife that the decree could not become effective until it had been recorded and that, therefore, she was a widow of her deceased former husband. It was pointed out that the differences between the parties in "material considerations" is to be measured by the worth of the husband's estate and that no sentiment could be involved as each had sought to be freed from the other. The chancellor held that the decree had not become effective because the husband had died before the decree was recorded and set it aside and dismissed the case.
The Florida Supreme Court, in reversing, held that recordation of a final decree is a procedural and ministerial act, that a decree when recorded is but evidence of judicial action already taken and that a failure to perform the act of recording may be remedied by an order nunc pro tunc. The Florida Court held that the judicial labor had ended with the signing of the decree, and concluded that when the clerk recorded it had no effect upon the decision of the chancellor dissolving the union.
See also Becker v. King, 307 So.2d 855 (Fla.App. 1975) which was a divorce case in which a decree was entered following a complete trial and determination of the issues, but after the death of one of the parties. In Becker v. King, supra, the Florida Court said:
Once a court of record has jurisdiction of the cause and the parties and all the evidence has been presented, the cause is then ripe for judgment and the court is not thereafter deprived, by the death of a party, of its inherent power to render a decision or judgment and may do so in the interest of justice by a judgment nunc pro tunc as of the time of submission.
.....
Nunc pro tunc means "now for then" and when applied to the entry of a legal order or judgment it normally does not refer to a new or fresh (de novo) decision, as when a decision is made after the death of a party, but relates to a ruling or action actually previously made or done but concerning which for some reason the record thereof is defective or omitted. The later record making does *964 not itself have a retroactive effect but it constitutes the later evidence of a prior effectual act.
(307 So.2d at 858-859).
Although courts in some other states have reached different conclusions, the majority of courts in which the question has arisen seem to have adopted a similar line of reasoning, that the decree is valid between the parties once the cause has been adjudicated, even though the decree is not final (for appeal purposes) until entered by the clerk. See Cornell v. Cornell, 7 N.Y.2d 164, 196 N.Y.S.2d 98, 164 N.E.2d 395 (1959); Becker v. King, 307 So.2d 855 (Fla.App. 1975); Tuttle v. Tuttle, 89 N.H. 219, 196 A. 624 (1938); Freeman on Judgments, § 135 at 254 (5th Ed. 1925).
Two decisions of this Court are cited as supporting the view of Pearl Marie Thrash, appellant. Of these, Jackson v. Schwartz, 240 So.2d 60 (Miss. 1970) relates exclusively, as is apparent upon the face of the opinion, with establishing a uniform rule to be used in computing the time within which it is necessary to take an appeal, and holds, that for this purpose, the computation shall begin when the decree or judgment is recorded.
In the other case cited by appellant, Pittman v. Pittman, 375 So.2d 415 (Miss. 1979) this Court dealt with a divorce suit in which the wife had been the successful complainant. The chancellor heard the case and took it under advisement for "final disposition and a final decree in vacation." Afterward, the chancellor wrote a letter to the solicitors asking that a decree be prepared in accordance with instructions set out in his letter. There was no formal adjudication of the issues in writing, signed by the chancellor and filed with the clerk of the court as in the case here. In Pittman, some three weeks after receiving the letter, a decree was prepared and mailed to the chancellor. This decree was signed by the chancellor and filed on October 27, 1978. In the meantime, the successful litigant, Ella Mae Pittman, had died on October 17, 1978.
This Court held, on the facts of the case, that the death of the party prior to the entering of the decree had rendered moot the question on divorce, stating that "all issues in the case were incidental to the divorce and the contest and the entire case died with the complainant."
We have concluded that Pittman is clearly distinguishable from the present case on its facts.
Here, inescapably and unavoidably, substantial property rights would be affected by the setting aside of the decree and would result in the divorced wife succeeding to all of the rights of a surviving widow and heir to the detriment of the surviving child. The final adjudication of the issues in this case was completed during the lifetime of the successful litigant, and such formal written adjudication in writing, signed by the chancellor, was on file with the clerk of the court. This was not the case in Pittman. As a matter of fact, the final decree also was signed by the chancellor prior to the husband's death, and his intention to file it on Monday, a date after the death, could not have the effect of rendering it a nullity. It does not appear that the provisions of Mississippi Code Annotated section 11-7-25 (1972) were cited to the court in Pittman or were relied upon by the complaining party. We have concluded that, in the absence of some special circumstances such as would cause a miscarriage of justice by so doing, the provisions of that section apply in a case such as this, the death of the husband having occurred long after the formal decision of all issues by the trier of facts. To hold otherwise, we think, would work a manifest miscarriage of justice. The decree appealed from, upholding the divorce decree as of April 8, 1978, will be affirmed.
AFFIRMED.
PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.