MOUNT SINAI HOSPITAL, INC., Respondent-Appellant, *v.* LEON J. DAVIS, Individually and as President of Local 1199, Retail Drug Employees Union, et al., Appellants-Respondents.

BETH DAVID HOSPITAL, Respondent-Appellant, *v.* LEON J. DAVIS, Individually and as President of Local 1199, Retail Drug Employees Union, et al., Appellants-Respondents.

BETH ISRAEL HOSPITAL ASSOCIATION, Respondent-Appellant, *v.* LEON J. DAVIS, Individually and as President of Local 1199, Retail Drug Employees Union, et al., Appellants-Respondents.

BRONX HOSPITAL, Respondent-Appellant, *v.* LEON J. DAVIS, Individually and as President of Local 1199, Retail Drug Employees Union, et al., Appellants-Respondents.

LENOX HILL HOSPITAL, Respondent-Appellant, *v.* LEON J. DAVIS, Individually and as President of Local 1199, Retail Drug Employees Union, et al., Appellants-Respondents.

First Department, June 24, 1959.

David L. Benetar of counsel (Proskauer, Rose Goetz & Men-
delsohn; Nordlinger, Riegelman, Benetar & Charney; Simpson
Thacher & Bartlett; Poletti & Freidin; and Harold M. Weston,
attorneys), for respondents-appellants.

Joseph Tauber of counsel (Weinstock & Tauber, attorneys),
for appellants-respondents.

Per Curiam.  These five consolidated appeals are by plain-
tiffs — voluntary charitable hospitals in the City of New York —
from orders denying their motions to adjudge defendant, Local
1199, Retail Drug Employees Union and specified individuals
guilty of contempt in violating the provisions of temporary
injunctions and restraining orders of the Supreme Court.

On May 25, 1959, Justice Tilzer, sitting at Special Term,
issued temporary injunction orders enjoining strikes — and
picketing incident thereto — at plaintiffs' hospitals, and pro-
vided for an immediate trial of the actions.  Notwithstanding
the service of Justice Tilzer's orders, the strikes and picketing
continued.  The five hospitals thereupon applied at Special
Term to adjudge Local 1199 and specified officials of Local 1199
guilty of contempt.

Denial of the motions to punish for contempt is bottomed on
the conclusion by the Special Term Justice that the injunctions
were improperly issued and that the strikes were lawful and
nonenjoinable.  We hold (1) that the Special Term Justice in
arriving at his conclusion improperly arrogated the power to
pass upon, and in effect review, the validity of the orders of a
fellow Justice of co-ordinate jurisdiction; (2) that the conclu-
sion that the injunction orders were void, conflicts with appellate
court decisions which have uniformly held otherwise, including
a decision by this court handed down the same day as the Special
Term orders under review; and (3) that irrespective of the
claimed impropriety or invalidity of the injunction orders it was
the duty of the union and its officials, in the circumstances
presented here, to obey those orders until they were set aside by
proper procedures and their failure to do so constitutes criminal
contempt of the court's orders.

1. A judge of a court should not ordinarily reconsider, disturb
or overrule an order in the same action of another court of

co-ordinate jurisdiction. As was said in *Matter of Hines* (88 F. 2d 423, 425 [C. C. A. 2d]): " Such a rule is essential to an orderly and seemly administration of justice in a court composed of several judges ".

The question of jurisdiction to act, in the face of section 876-a of the Civil Practice Act, had been presented and litigated before Special Term upon the prior motions for temporary injunctions. In view of the existing case law on the inapplicability of section 876-a to voluntary charitable hospitals, it convincingly appeared that, in granting the injunctions, the court was not acting without jurisdiction. At most, there were involved questions of law and discretion that could be reviewed only by appellate courts when properly presented to them. There was neither necessity nor warrant for another Justice to depart from the rulings so made, particularly since there was recognition of the inappropriateness of one co-ordinate court reviewing the acts of another.

2. Moreover, in finding that the injunction orders were void, in violation of section 876-a of the Civil Practice Act, Special Term cited, but did not follow, recent decisions in this and the Second Department. (*Jewish Hosp. of Brooklyn* v. "*John Doe* ", 252 App. Div. 581; *Society of New York Hosp.* v. *Hanson,* 185 Misc. 937, affd. 272 App. Div. 998; see, also, *Jewish Hosp. of Brooklyn* v. *Davis,* 8 A D 2d 786). Even an appellate court would not review the propriety of such injunctions on a motion to punish for criminal contempt whatever it might do on a direct appeal, and we do not purport to do so now. On the instant appeal we are concerned only with the motions to punish for contempt, as Special Term should have been.

3. Finally, it is elemental that a contemnor may not question the validity of the order violated. (*Daly* v. *Amberg,* 126 N. Y. 490.) The purpose of a criminal contempt proceeding for willful disobedience of its lawful mandate is to vindicate the authority of the court and its orders. (See *People ex rel. Munsell* v. *Court of Oyer & Terminer,* 101 N. Y. 245; *King* v. *Barnes,* 113 N. Y. 476.) While upon a motion to cite for civil contempt, a court may look into the propriety of the order violated (*Bachman* v. *Harrington,* 184 N. Y. 458; *Koenig* v. *Eagle Waist Co.,* 176 App. Div. 724) no such power should be exercised in proceedings to punish for criminal contempt.

In *United States* v. *Mine Workers* (330 U. S. 258), the United States Supreme Court held that the respondents were guilty of criminal contempt even if a " labor dispute " were involved and the Norris-LaGuardia Act deprived the District Court of " jurisdiction " to issue the restraining order. The court there held

(p. 293): " an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." In the words of Mr. Justice FRANKFURTER, in his concurring opinion in that case (pp. 309–310). " Only when a court is so obviously traveling outside its orbit as to be merely usurping judicial forms and facilities, may an order issued by a court be disobeyed and treated as though it were a letter to a newspaper."

As indicated above, the prior injunction orders, far from resting on a frivolous claim of jurisdiction, were founded upon decisions of appellate courts which had not been overruled. Defendants could not cavalierly ignore these orders and then relitigate their propriety on the merits before another justice of the same court upon motions to punish them for contempt. Such procedure creates chaos in the enforcement of court orders.

Defendants could have expeditiously attacked the injunction orders on appeals to this court, which could have been heard as quickly as, or sooner than, the instant appeals. Instead, they deliberately violated the injunctions and attempted a belated and collateral assault on the orders when cited for criminal contempt. This was a willful and studied disobedience. Consequently the persons responsible therefor should have been held guilty of criminal contempt.

The orders denying the applications to punish certain persons guilty of a criminal contempt should be reversed, on the law and on the facts, and the motions granted as follows:

1. In the Beth David Hospital action, the court imposes a fine of $250 on Local 1199, Retail Drug Employees Union; and a fine of $250 on Leon J. Davis in addition to imprisonment of 15 days.

2. In the Beth Israel Hospital Association case, the court imposes a fine of $250 on Local 1199; and a fine of $250 on Leon J. Davis in addition to imprisonment of 15 days. The application is denied as to Moe Foner.

3. In the Bronx Hospital action, the court imposes a fine of $250 on Local 1199; and a fine of $250 on Leon J. Davis in addition to imprisonment of 15 days. The court also imposes a fine of $100 on Philip Kemenkowitz.

4. In the Lenox Hill Hospital action, the court imposes a fine of $250 on Local 1199; and a fine of $250 on Leon J. Davis in addition to imprisonment of 15 days.

5. In the Mount Sinai Hospital, Inc., case, the court imposes a fine of $250 on Local 1199; and a fine of $250 on Leon J. Davis in addition to imprisonment of 15 days. In addition, the court imposes a fine of $100 each on Elliot H. Godoff and Harry Epstein, also known as Henry Epstein.

The terms of imprisonment imposed on respondent Leon J. Davis shall run concurrently with each other and concurrently with the sentence heretofore imposed on said Leon J. Davis and affirmed by this court in *Jewish Hosp. of Brooklyn* v. *Davis* (8 A D 2d 786).

BOTEIN, P. J., BREITEL, VALENTE, McNALLY and STEVENS, JJ., concur.

Orders appealed from unanimously reversed and motions granted, etc.