Van Voobhis, J.
The question here is whether an interlocutory judgment of divorce, entered in a County Clerk’s office in 1915, created substantive rights in the plaintiff by the lapse of three months without any order intercepting the finality of the adjudication. Fifteen years after the interlocutory decree, plaintiff remarried. Eight years after her remarriage her first husband (defendant in the divorce suit) died. Her second husband died after she had cohabited with him as husband and wife for 26 years, leaving a will giving his residuary estate to the intervenor-respondent. . Plaintiff-appellant filed an election to take her intestate share against the will under section 18 of the Decedent Estate Law. Her right to do so is contested by the residuary legatee upon the ground that she is not his widow, that her marriage was illegal and void for the reason that a final judgment of divorce was not entered upon the interlocutory judgment prior to her remarriage, and during the lifetime of her first husband. When this interlocutory judgment of divorce was entered, section 1774 of the Code of Civil Procedure, after stating that no final judgment dissolving a marriage *167 should be entered until after the expiration of three months after the filing of the decision of the court or report of the Referee, continued by stating: ‘ ‘ Within thirty days after the expiration of said period of three months final judgment shall be entered as of course upon said decision or report, unless for sufficient cause the court in the meantime shall have otherwise ordered.”
The interlocutory judgment in this case ordered “ that three months after the entry of this Interlocutory Judgment unless otherwise directed by the Court, entry of final judgment shall be granted that the marriage between the plaintiff, Olive Cornell, and the defendant Elven J. Cornell, be dissolved and the parties freed from all the obligations thereto ”.
The court did not order otherwise in the meantime. Based on these facts, a final judgment of divorce was entered nunc pro tunc as of the date when plaintiff was entitled to have had it entered in 1915. The residuary legatee under the second husband’s will, intervenor-respondent herein, moved at Special Term to vacate this final judgment. Her motion was denied, but was granted on appeal to the Appellate Division. The case comes to us with the final judgment of divorce stricken out.
The Court of Appeals has discussed the subject of nunc pro tunc orders in matrimonial actions (Mohrmann v. Kob, 291 N. Y. 181, 186): “ The function of orders nunc pro tunc is to correct irregularities in the entry of judicial mandates or like procedural errors. (Merrick v. Merrick, 266 N. Y. 120, 122; Guarantee Trust & Safe Deposit Co. v. Philadelphia, Reading & N. E. R. R. Co., 160 N. Y. 1, 7.) ‘ When a ruling has in fact been made but is improperly evidenced by a defective mandate, or by no mandate at all, an appropriate and suitable order or judgment which manifests the existence of a determination may subsequently be granted to take effect as of the date of such determination. ’ (Merrick v. Merrick, supra, p. 122.) However, an order nunc pro tunc may not serve to record a fact, such as a divorce, as of a prior date when the fact did not then exist. ‘ A court has no power to have a new order or ruling so entered, thus bringing into the record an element which did not previously exist. The facts must exist, and then if the record of them is imperfect or incomplete, it may be amended, but if the record shows the *168 actual facts then no order can be properly made changing them so as to take the place of an act that was required to be previously performed. While a court may record an existing fact nunc pro tunc, it cannot record a fact as of a prior date when it did not then exist.’ (Guarantee Trust & Safe Deposit Co. v. Philadelphia, Reading & N. E. R. R. Co., supra, p. 7; Stock v. Mann, 255 N. Y. 100, 103.) ” Mohrmann v. Kob involved dissolution of marriage as of a date before a divorce action was instituted.
The basis for entry both of an interlocutory and final judgment of divorce is the decision of the court or the report of an Official Referee, and the entry of the judgment is the ministerial act of the clerk (Snell v. Snell, 177 Misc. 923), which is not altered by the circumstance that it is usually signed by the Justice of the court by whom the decision was made. ‘ ‘ The signature of the judge simply relieved the clerk from the necessity of comparing the decision of the court with the proposed judgment furnished by the plaintiffs’ Attorney, to see that they corresponded. It was no part of the judgment and was wholly superfluous. (Loeschick v. Addison, 3 Rob. 331.) The decision was the only authority for entering the judgment. The entry of judgment is the act of the clerk, and he might himself have prepared and entered it, or he could adopt the form prepared by the plaintiffs’ attorney.” (Clapp v. Hawley, 97 N. Y. 610, 614-615.) The same thing applies to divorce actions (Civ. Prac. Act, § 1174; Snell v. Snell, supra).
If the decision of the court granting this divorce be construed as providing for the entry of a separate final judgment at the end of three months, the failure to enter such a judgment was an omission to perform a ministerial act under the decisions above cited. (See, also, Christopher v. Van Liew, 57 Barb. 17, cited in Luckie v. Goddard, 171 Misc. 774, 776.) An order nunc pro tunc is not forbidden by the Merrick case (266 N. Y. 120, 122) if “ a ruling has in fact been made but is improperly evidenced by a defective mandate, or by no mandate at all”. That is the present situation. In theory of law it was the function of the clerk to prepare and enter a final judgment to carry out the decision if the interlocutory judgment did not become final by itself. It is within the power of the court at the present time to correct the failure by making the judgment *169 final as of the time when it should have been done. The omission was a mere irregularity. It was so held in substance in Jack-man v. Jackman (258 App. Div. 838, motion for leave to appeal denied 282 N. Y. 808); Rizzoro v. Rizzoro (260 App. Div. 881) ; Matthews v. Matthews (185 Misc. 1013). See, also, Monacchio v. Monacchio (247 App. Div. 810), and Tuttle v. Tuttle (89 N. H. 219).
It makes little difference in this case whether the judgment that was entered be amended to state clearly that it was to become final as of course or a final judgment be directed to be entered nunc pro tunc. The effect is the same in either case. The court has power to direct the clerk to enter the judgment that should have been entered.
In view of that circumstance, we find no difficulty in concluding that, where there has been no order counteracting the interlocutory decree after the latter has been entered for three months, the substantive right to a divorce has matured and we see no reason on account of which the final judgment — where in form a separate instrument of that nature is called for — should not be entered nunc pro tunc in order to manifest the existence of a determination already made.
The death of appellant’s first husband in 1938 does not interfere with accomplishing this result, inasmuch as he did not die until after the divorce action had reached the stage where, on the basis of the decision of the Special Term and the entry of the interlocutory judgment, the substantive right to a divorce had already matured.
The rule is, of course, that a suit for divorce abates at the death of either party, because the marriage relation sought to be dissolved no longer exists, and a judgment cannot thereafter be entered nunc pro tunc unless the complainant was entitled to have had such judgment entered while both parties were living. After an analysis of such authority in the different States as exists on the question, the annotator (104 A. L. E. 664) concluded accurately that “ if the facts justifying the entry of a decree were adjudicated during the lifetime of the parties to a divorce action, so that a decree was rendered or could or should have been rendered thereon immediately, but for some reason was not entered as such on the judgment record, the death of one of the parties to the action subsequently to the *170 rendition thereof, but before it is in fact entered upon the record, does not prevent the entry of a decree nunc pro tunc to take effect as of a time prior to the death of the party.” Cases cited in support of this statement are Matter of Cook (77 Cal. 220); Tikalski v. Tikalski (166 Minn. 468); Hoyt v. Hoyt (98 N. J. Eq. 426); Rush v. Rush (97 Tenn. 279), and Kimball v. Kimball (44 N. H. 122).
Here there was a final adjudication made during the lifetime of the parties, in that the decision of the Special Term granting the divorce and directing the entry of interlocutory judgment was filed, the interlocutory judgment was entered and the three months specified therein elapsed without the court otherwise ordering against the entry of a final judgment. No order against the entry of final judgment has ever been made. Consequently, as has been previously stated, all that remained was the mere ministerial act of entering the final judgment to conform to the adjudication of the substantive rights of the parties which had already been made and was expressed in the decision of the court and the interlocutory judgment that were already on record.
The decision by the Appellate Division vacating the final judgment entered nunc pro tunc, is based on the decision by this court in 1909 in Matter of Crandall (196 N. Y. 127). There are some distinguishing factors between Crandall and the present appeal. Here it was the plaintiff in the divorce action who made application for the entry of a final judgment nunc pro tunc. She had remarried on the strength of her divorce before her first husband died. In signing her application for the marriage license to her second husband, she stated that her “ last marriage ended by divorce.” Evidently the omission to enter the final judgment was inadvertent. In the Crandall case, upon the other hand, it was the plaintiff in the divorce action who had died. His former attorney sought to have the final decree entered post mortem. It was possible that Mr. Crandall, • for reasons of his own in that case, had directed that no final decree be entered. He might have changed his mind and decided that he did not want a divorce. The court said (pp. 132, 131) that he “ had placed himself before death ” in a position where it could not be said that he was entitled as of course to a final judgment, and that “ under the circumstances presented to us ” the entry of the final judgment was not “ automatic and *171 of course.” No doubt of that kind could exist in the instant case.
There are statements in Matter of Crandall (supra) which go beyond the facts decided. Crandall has usually been cited in instances where it was sought by a defendant in a divorce action to amend the decree nunc pro tunc so as to permit him to remarry as of a date prior to an attempted remarriage, or where one of the parties to the divorce action has died before the lapse of three months following the entry of the interlocutory judgment. We do not question its authority in situations of those kinds. Neither are we called upon to deal at present with the result where an application to enter nunc pro tunc is made in behalf of a deceased spouse, who was plaintiff in the divorce action and omitted to have a final decree entered during life. The whole policy of entering final judgments in divorce cases, as separate instruments, was abolished by the amendment of section 1176 of the .Civil Practice Act by chapter 203 of the Laws of 1946. This, in itself, would have changed the result below in the instant case if plaintiff’s first husband (defendant in the divorce suit) had not died in 1938 before chapter 203 of the Laws of 1946 was enacted (Johnson v. Johnson, 198 Misc. 691, affd. 277 App. Div. 1143). The theory of decision which dictated the order here appealed from was abandoned long ago in New Jersey (Vogler v. Vogler, 98 N. J. Eq. 421; Hoyt v. Hoyt, 98 N. J. Eq. 426, supra). It has been abandoned in California (Macedo v. Macedo, 29 Cal. App. 2d 387; Ringel v. Superior Ct. of Alameda County, 54 Cal. App. 2d 34; Matter of Hughes, 80 Cal. App. 2d 550). Insofar as Matter of Crandall conflicts with what has been said here, it should be deemed to have been overruled.
Of course a nunc pro tunc order of this nature would not be granted in situations where vested rights are impaired, but, as was well said by the California court in Macedo v. Macedo (supra, p. 391): “ Here, however, we can perceive no vested rights in appellant. He had no vested right to dissolve his marriage status in any particular manner. In fact it would be the tendency of the law to validate the marriage rather than to find ways of destroying it. It confirms rather than impairs the contract.” These statements are particularly apposite to the present situation. The residuary legatee under the will of W. Hartwell Irwin, with whom appellant lived as husband and *172 wife for 26 years, has no vested right in any technical illegality affecting that marriage. She could hardly contend that her vested rights have been destroyed.
The order of the Appellate Division should be reversed and the order of Special Term reinstated, with costs in this court and in the Appellate Division.