Joseph Rivera MATOS, an infant by his
father and natural guardian, Victor
RIVERA, Petitioner–Appellant,

v.

SECRETARY OF the DEPARTMENT
OF HEALTH AND HUMAN SER-
VICES, Respondent–Appellee.

No. 93–5155.

United States Court of Appeals,
Federal Circuit.

Sept. 15, 1994.

Preston J. Douglas, Fuchsberg & Fuchs-
berg, New York City, argued for petitioner-
appellant.

Aristia Karas, Atty., Dept. of Justice,
Washington, DC, argued for respondent-ap-
pellee. With her on the brief were Frank W.
Hunger, Asst. Atty. Gen., Helene M.
Goldberg, Director and John Lodge Euler,
Deputy Director.

Before LOURIE, RADER, and SCHALL,
Circuit Judges.

SCHALL, Circuit Judge.

Petitioner, Joseph Rivera Matos, an infant
by his father and natural guardian, Victor
Rivera, appeals the decision of the United
States Court of Federal Claims [1] denying his
motion for relief from judgment. In his mo-
tion, which was brought pursuant to Rule
60(b) of the Rules of the Court of Federal
Claims (RCFC), petitioner sought relief from
the court's April 8, 1992 judgment dismissing
his petition for compensation under the pro-
gram established by the National Childhood
Vaccine Injury Act of 1986 (Vaccine Act or
Act), 42 U.S.C. §§ 300aa–1 to 300aa–34 (1988
& Supp. V 1993). *Matos v. Secretary of
Dep't of Health & Human Servs.*, 25 Cl.Ct.
703 (1992) (*Matos I*). Petitioner had sought
compensation for injuries resulting from a
diphtheria-pertussis-tetanus (DPT) vaccina-
tion received in 1973. The judgment of dis-
missal was entered after the court concluded
that the petition was barred by 42 U.S.C.
§ 300aa–11(a)(5)(A) and –11(a)(5)(B). *Id.*
We affirm. However, we do so on a ground
different from the one upon which the Court

1. The Federal Courts Administration Act of 1992,
Pub.L. No. 102–572, § 902(a), 106 Stat. 4506,
4516, changed the name of the United States
Claims Court to the "United States Court of
Federal Claims." Although the proceedings in
this case spanned the time of this name change,
for consistency we refer to the court throughout
as the "Court of Federal Claims."

of Federal Claims relied in denying petitioner's motion.

## BACKGROUND

### I. *The Statutory Scheme*

The Vaccine Act established the "National Vaccine Injury Compensation Program [Program] ... under which compensation may be paid for a vaccine-related injury or death." 42 U.S.C. § 300aa–10(a). An action for compensation under the Program is commenced with the filing of a petition in the Court of Federal Claims. *See* 42 U.S.C. § 300aa–11(a)(1), –11(b)(1)(A). The Act recognizes two types of cases: those in which vaccine was administered prior to October 1, 1988, the effective date of the Act; and those in which vaccine was administered after October 1, 1988. *See* 42 U.S.C. § 300aa–11(a). Different rules with respect to the filing of petitions for compensation apply to these different types of cases. Since Joseph received his DPT vaccination in 1973, his claim is governed by the rules that cover cases in which vaccine was administered prior to the effective date of the Act. The statutory provisions which were held to bar the petition in this case, 42 U.S.C. § 300aa–11(a)(5)(A) and –11(a)(5)(B), place limitations upon who may file petitions for compensation in pre-October 1, 1988 cases. They provide as follows:

> (5)(A) A plaintiff who on October 1, 1988, has pending a civil action for damages for a vaccine-related injury or death may, at any time within 2 years after October 1, 1988, or before judgment, whichever occurs first, petition to have such action dismissed without prejudice or costs and file a petition under subsection (b) of this section for such injury or death.

> (B) If a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) of this section for such injury or death.

### II. *Facts of the Case*

Joseph was given a DPT vaccination on April 6, 1973, at the Bronx Lebanon Hospital Center (Bronx Lebanon) in New York City. *Matos I*, 25 Cl.Ct. at 703. The next day, after he had developed a high fever and had suffered a generalized seizure, he was taken to Fordham Hospital (Fordham), a unit of the New York City Health and Hospitals Corporation (Health and Hospitals Corporation), where a spinal tap was performed. *Id.* at 703–04. He was diagnosed as having febrile seizures and a viral infection and was sent home with medication. *Id.* at 704. He had another seizure the following day, however, and was taken back to Fordham, where his temperature was recorded at 105 degrees. *Id.* Because no beds were available at Fordham, he was transferred to Misericordia Hospital Medical Center (Misericordia), where he remained until May 29, 1973. *Id.* From there, he was discharged with a final diagnosis of "diffuse encephalopathy probably secondary to pertussis." *Id.*

In 1976, petitioner filed civil actions in New York Supreme Court against the vaccine administrator, Bronx Lebanon, the Health and Hospitals Corporation (as owner of Fordham), and Misericordia. *Id.* The complaint against Bronx Lebanon alleged negligence in its administration of the vaccine, while the complaints against the Health and Hospitals Corporation and Misericordia alleged negligence in their failure to treat adequately Joseph's DPT-related injuries during the period following his vaccination. On November 17, 1989, Bronx Lebanon brought a motion for summary judgment in the action against it. *Id.* In its motion, Bronx Lebanon argued that there were no triable issues of fact and that petitioner's claim lacked merit because the hospital had provided proper treatment. Petitioner failed to respond to the motion. *Id.* Subsequently, in an order dated December 18, 1989, the court granted Bronx Lebanon's motion by default and dismissed the action against it. *Id.*

On July 23, 1990, petitioner filed a petition for compensation under the Program. *Id.* Petitioner alleged that within 48 hours after his receipt of the DPT vaccine, he experienced seizures, encephalopathy, and shock collapse.[2] The Secretary responded with a

---

**2.** Encephalopathy and shock collapse are defined in 42 U.S.C. § 300aa–14(b)(3)(A) and –14(b)(1), respectively.

motion to dismiss, contending that the petition was barred under 42 U.S.C. § 300aa–11(a)(5)(A) and –11(a)(5)(B) on account of petitioner's actions against Bronx Lebanon, the Health and Hospitals Corporation, and Misericordia. *Id.* On November 8, 1991, the special master to whom the case was assigned [3] granted the Secretary's motion to dismiss and stated that "[b]ecause judgment occurred in a civil action [against Bronx Lebanon] which was pending on the effective date of the Act, the petitioner is barred from pursuing the instant claim, and the petition must be dismissed." *Id.* Since the ruling based on the action against Bronx Lebanon was dispositive, the special master did not address the Secretary's argument that the petition was barred by reason of petitioner's actions against the Health and Hospitals Corporation and Misericordia. On April 8, 1992, the Court of Federal Claims affirmed the special master's order of dismissal and dismissed the petition. [4]

Following the dismissal of his case, petitioner went back to state court, where he filed a motion requesting that the order granting Bronx Lebanon's motion for summary judgment be vacated and that he be permitted to dismiss the action against Bronx Lebanon voluntarily. On August 25, 1992, the state court vacated its prior order and dismissed without prejudice the action against Bronx Lebanon *nunc pro tunc*, as of December 18, 1989.

On September 8, 1992, petitioner filed a motion for relief from judgment under RCFC 60(b), on the ground that a prior judgment (the December 18, 1989 order in New York Supreme Court) upon which the judgment of the Court of Federal Claims was based had been vacated and that it was no longer equitable that the judgment of the court stand. [5] After the motion was filed, the case was remanded to the special master with instructions (i) to determine whether petitioner's Vaccine Act petition was barred by reason of the actions against the Health and Hospitals Corporation and Misericordia, or (ii) to vacate the November 8, 1991 order of dismissal. [6] On remand, the special master determined that the petition was barred because petitioner's civil actions against the Health and Hospitals Corporation and Misericordia were pending on the date the Vaccine Act petition was filed. The special master also suggested that a jurisdictional defect could not be cured by a *nunc pro tunc* order dismissing the civil action against Bronx Lebanon as of a date prior to the filing of the petition. The Court of Federal Claims affirmed the special master's order and denied petitioner's motion for relief from judgment. This appeal followed. [7]

## DISCUSSION

### I. *The Standard of Review*

The standard of review with respect to a trial court's denial of a motion for

---

3. After a petition for compensation is filed in the Court of Federal Claims, the case is initially assigned to a special master. *See* 42 U.S.C. § 300aa–12(d).

4. A decision of a special master may be appealed to the Court of Federal Claims. *See* 42 U.S.C. § 300aa–12(e).

5. In support of his motion, petitioner argued that the judgment of the New York Supreme Court upon which the April 8, 1992 judgment of the Court of Federal Claims had been based had been vacated by the *nunc pro tunc* ruling in state court. RCFC 60(b) provides, *inter alia*, that a party may be relieved from a final judgment if "a prior judgment upon which [the final judgment] is based has been ... vacated...."

6. Thus, the Court of Federal Claims apparently believed that the *nunc pro tunc* order in state court had the effect of removing the civil action

against Bronx Lebanon as a bar to the filing of a petition under the Program.

7. The appeal was stayed on August 17, 1993, after petitioner filed a *second* motion for relief from judgment. In that motion, petitioner argued that our recent decision in *Schumacher v. Secretary of Department of Health & Human Services*, 2 F.3d 1128 (Fed.Cir.1993), constituted a "change in law" which merited relief from judgment under RCFC 60(b)(5). The Court of Federal Claims rejected petitioner's argument and denied his motion. *Matos v. Secretary of Dep't of Health & Human Servs.*, 30 Fed.Cl. 223 (1993) (*Matos II*). In denying petitioner's motion, the court clarified its earlier order remanding the case to the special master, in that the court made it clear that it believed the *nunc pro tunc* order had the effect of voluntarily dismissing the civil action against Bronx Lebanon. *Id.* at 226. The court's denial of the second motion for relief from judgment was not appealed.

relief from judgment is abuse of discretion. *Patton v. Secretary of Dep't of Health & Human Servs.,* 25 F.3d 1021, 1029 (Fed.Cir. 1994). "An abuse of discretion exists when, *inter alia,* the lower court's decision was based on an erroneous conclusion of law or on a clearly erroneous finding of fact." *Broyhill Furniture Indus., Inc. v. Craftmaster Furniture Corp.,* 12 F.3d 1080, 1083 (Fed. Cir.1993). In this case, the denial of petitioner's motion for relief from judgment was based upon the determination of the Court of Federal Claims that certain provisions of the Vaccine Act barred the filing of the petition for compensation. Accordingly, the court lacked jurisdiction over petitioner's claim. *Matos II,* 30 Fed.Cl. at 226.[8] There are no facts in dispute. Thus, the case presents questions of federal law involving statutory interpretation and jurisdiction. We review the trial court's resolution of such questions de novo. *See, e.g., Weddel v. Secretary of Dep't of Health & Human Servs.,* 23 F.3d 388, 391 (Fed.Cir.1994); *Dehne v. United States,* 970 F.2d 890, 892 (Fed.Cir.1992).

## II. *Contentions of the Parties*

Petitioner contends that his petition was not barred by reason of his civil action against Bronx Lebanon because the state court's order dismissing that action *nunc pro tunc,* as of December 18, 1989, cured the jurisdictional defect. In addition, petitioner argues that his petition was not barred by reason of the civil actions against the Health and Hospitals Corporation and Misericordia because those actions were not civil actions "for a vaccine-related injury" within the meaning of 42 U.S.C. § 300aa–11(a)(5)(B).

The Secretary argues that the petition was barred because petitioner failed to dismiss the civil action against Bronx Lebanon before it had proceeded to judgment. Alternatively, the Secretary argues that the petition was barred because the civil actions against the Health and Hospitals Corporation and Misericordia were pending civil actions "for a vaccine-related injury" under 42 U.S.C. § 300aa–11(a)(5)(B). We agree with the Secretary's first argument and affirm on that ground. We do not reach the issue of whether the actions against the Health and Hospitals Corporation and Misericordia barred the petition.

## III. *Analysis*

■ At issue in this case are the provisions of 42 U.S.C. § 300aa–11(a)(5)(A) and – 11(a)(5)(B). As we observed in *Amendola v. Secretary of Department of Health & Human Services,* 989 F.2d 1180, 1183 (Fed.Cir. 1993), "[o]ne way to make sense of these two paragraphs is to read them in reverse." Thus, section 300aa–11(a)(5)(B) states a general rule barring the filing of a petition for compensation under the Program if the would-be petitioner has a civil action for a vaccine-related injury or death pending on October 1, 1988. *Id.* at 1184. Section 300aa–11(a)(5)(A), however, provides an escape hatch for such a would-be petitioner. Under that section, a party who has a civil action for a vaccine-related injury or death pending on October 1, 1988, may file a petition for compensation if, within two years after October 1, 1988, *and* before judgment, the party petitions to have the civil action dismissed. *Id.* at 1183.

Petitioner's civil action against Bronx Lebanon was pending in New York Supreme Court on October 1, 1988. Thus, when the Act became effective, petitioner was barred by 42 U.S.C. § 300aa–11(a)(5)(B) from filing a petition for compensation under the Program. The only way petitioner could remove this bar was to take advantage of the provisions of 42 U.S.C. § 300aa–11(a)(5)(A). In order to do so, within two years of October 1, 1988, *and* before judgment, petitioner had to petition in state court to have the civil action dismissed. Petitioner failed to do this, however. He made no effort to have the civil action dismissed within two years of October 1, 1988, *and* on December 18, 1989, he permitted Bronx Lebanon to obtain a default

---

8. 42 U.S.C. § 300aa–12(a) states that "[t]he United States Court of Federal Claims and the United States Court of Federal Claims special masters shall, in accordance with this section, have jurisdiction over proceedings to determine if a petitioner under section 300aa–11 of this title is entitled to compensation under the Program and the amount of such compensation." The court lacked jurisdiction here because, with the filing of the petition barred, there could be no "petitioner under section 300aa–11 . . . ."

judgment against him in the action. Thus, the petition for compensation which petitioner filed in the Court of Federal Claims on July 23, 1990, was barred because petitioner had not sought to have the state court civil action dismissed before judgment was rendered in it. The April 8, 1992 decision of the Court of Federal Claims affirming the November 8, 1991 decision of the special master dismissing the petition for compensation was correct.

Petitioner argues that the order issued in New York Supreme Court dismissing his civil action *nunc pro tunc* as of December 18, 1989, which formed the basis for his motion for relief from judgment, removed the bar to the filing of a petition for compensation under the Program. We disagree. Unless Congress provides otherwise, the jurisdiction of the Court of Federal Claims is determined at the time of filing. *See Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 2221–22, 104 L.Ed.2d 893 (1989) (stating that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed"); *UNR Indus. v. United States,* 962 F.2d 1013, 1022 (Fed.Cir.1992) (interpreting the jurisdictional limitations under 28 U.S.C. § 1500), *aff'd sub nom. Keene Corp. v. United States,* — U.S. ——, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993). Petitioner's Vaccine Act petition was filed after his action against Bronx Lebanon had proceeded to judgment without his having sought to have the action dismissed pursuant to 42 U.S.C. § 300aa–11(a)(5)(A). Consequently, on its filing date, July 23, 1990, the petition was barred under § 300aa–11(a)(5)(B), and the Court of Federal Claims lacked jurisdiction. This state of affairs could not be changed by a *nunc pro tunc* order.

*Nunc pro tunc,* which means literally "now for then," merely describes "[t]he inherent power of [a] court to make its records speak the truth, *i.e.,* to correct [the] record at [a] later date to reflect what *actually occurred* at trial." Black's Law Dictionary 1069 (6th ed. 1990) (emphasis added). An order may be entered *nunc pro tunc* "to make the record speak the truth but it cannot supply an order which in fact was not previously made." *Crosby v. Mills,* 413 F.2d 1273, 1277 (10th Cir.1969). *See In re Mother Tucker's*

*Food Experience (Canada),* 925 F.2d 1402, 1404–05 (Fed.Cir.1991) (failure to comply with statutory requirements is not curable *nunc pro tunc); Transamerica Ins. Co. v. South,* 975 F.2d 321, 325–26 (7th Cir.1992); *Cornell v. Cornell,* 7 N.Y.2d 164, 196 N.Y.S.2d 98, 164 N.E.2d 395 (1959); *Daine v. Commissioner of Internal Revenue,* 168 F.2d 449 (2d Cir.1948).

Petitioner is not seeking to use the state court's *nunc pro tunc* order to make the record reflect what was actually done. Rather, he is relying upon the order to change the history of the case so that it states that something that was not done (voluntary dismissal) was done. As just seen, however, this is an impermissible use of a *nunc pro tunc* order. The jurisdictional defect in this case cannot be cured by a *nunc pro tunc* order, because such an order cannot change the *fact* that petitioner failed to seek dismissal of his state court civil action within two years of October 1, 1988, *and* before judgment, which is what is required by the escape hatch provisions of section 300aa–11(a)(5)(A).

## CONCLUSION

Petitioner's Vaccine Act petition was barred under 42 U.S.C. § 300aa–11(a)(5)(B) at the time it was filed because petitioner had failed to avail himself of the provisions of 42 U.S.C. § 300aa–11(a)(5)(A). As a result, the Court of Federal Claims lacked jurisdiction over petitioner's claim, and the jurisdictional defect could not be cured by the subsequent *nunc pro tunc* order in New York Supreme Court. Thus, the court did not abuse its discretion in denying petitioner's motion for relief from judgment. Indeed, far from not abusing its discretion, the court would have erred as a matter of law if it had granted the motion.

## COSTS

Each side shall bear its own costs.

AFFIRMED.