Michael Steven **HOOD** and Lynette Hood, Petitioners,

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–2737V.

United States Court of Federal Claims.

Oct. 12, 1995.

Amy Eskin, San Francisco, California, for petitioners.

Vincent J. Matanoski, with whom were Frank W. Hunger, Assistant Attorney General, Helene M. Goldberg, Director, John Lodge Euler, Deputy Director, and Gerard W. Fischer, Assistant Director, Washington, D.C., for respondent.

## OPINION

ANDEWELT, Judge.

### I.

In this vaccine action, petitioners, Michael and Lynette Hood, seek compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1 to –34 (the Vaccine Act), for the vaccine-related death of their daughter, Holly Hood. This action is before the court on petitioners' motion for review of the special master's May 4, 1995, order dismissing petitioners' October 1, 1990, petition for compensation. The special master based this dismissal on the jurisdictional bar contained in 42 U.S.C. § 300aa–11(a)(5), which provides that "[i]f a plaintiff has pending a civil action for damages for a vaccine-related injury or death," such person may not file a petition for compensation under the Vaccine Act. *See Flowers v. Secretary,*

*HHS,* 49 F.3d 1558 (Fed.Cir.1995).[1] The civil action upon which the special master relied in dismissing the petition is a California Superior Court action that petitioners filed on May 30, 1985, against Parke, Davis & Company and several other unnamed vaccine manufacturers to compensate petitioners for Holly Hood's vaccine-related injuries and death. The California court did not issue an order dismissing that action until February 23, 1993, almost 2½ years after petitioners filed the instant petition. For the reasons set forth below, this court affirms the special master's decision.

## II.

Petitioners presented a series of arguments to the special master to the effect that the Section 11(a)(5) bar does not apply to the instant petition because the California action was no longer pending when petitioners filed their petition on October 1, 1990. Petitioners argued that the California action was no longer pending as of May 31, 1988, based on petitioners' failure to serve the defendant with a copy of the complaint within three years after filing the action, as required by California Code of Civil Procedure (California Code) Sections 583.210 and 583.250, or at least as of May 31, 1990, based on the parties' failure to bring the action to trial within five years after the filing of the complaint, as required by California Code Sections 583.310 and 583.360. In the alternative, petitioners argued that regardless of the proper interpretation of the pertinent provisions of the California Code, when assessing the pendency of petitioners' California action, this court is bound by an August 15, 1994, order of the California Superior Court which dismissed petitioners' California action *nunc pro tunc* as of May 31, 1988.

The special master rejected petitioners' first two arguments on the ground that under the pertinent provisions of the California Code, expiration of the three- or five-year statutory periods does not result in the "automatic" dismissal of an action but rather simply renders the action "eligible for dismissal" once certain other prerequisites are satisfied. The special master concluded that because these prerequisites were not satisfied by October 1, 1990, for purposes of applying Section 11(a)(5), the California action was pending when petitioners filed the instant petition. Turning to the California court's *nunc pro tunc* order, the special master concluded that this order was insufficient to avoid the Section 11(a)(5) bar based on *Matos v. Secretary, HHS,* 35 F.3d 1549 (Fed. Cir.1994), in which the Court of Appeals for the Federal Circuit concluded, *inter alia,* that this court's jurisdiction over a petition under the Vaccine Act is determined on the date the petition is filed. When petitioners filed the instant petition, their California action was still pending because the California court had not yet entered an order dismissing that action.

## III.

■ This court reviews a special master's factual determinations under an arbitrary and capricious standard and reviews determinations on issues of law on a *de novo* basis. *Matos,* 35 F.3d at 1552; *Weddel v. Secretary, HHS,* 23 F.3d 388, 391 (Fed.Cir.1994); *Munn v. Secretary, HHS,* 970 F.2d 863, 870 & n. 10 (Fed.Cir.1992). Upon reviewing the special master's May 4, 1995, decision, this court concludes that the special master's analysis of the facts and discussion of the pertinent issues of law are thorough and well reasoned and generally answer the arguments presented by petitioners in their motion for review. In this opinion, rather than rephrase the arguments that the special master stated well or quote at great length from the special master's decision, the court will simply incorporate by reference the special

---

1. Section 11(a)(5) provides:

    (A) A plaintiff who on the effective date of this subpart has pending a civil action for damages for a vaccine-related injury or death may, at any time within 2 years after the effective date of this subpart or before judgment, whichever occurs first, petition to have such action dismissed without prejudice or costs and file a petition under subsection (b) of this section for such injury or death.

    (B) If a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) of this section for such injury or death.

master's reasoning and analysis and will affirm the special master's decision essentially on that basis. In Sections IV–VI, *infra*, the court will comment briefly on certain arguments presented by petitioners in their motion for review.

## IV.

Contrary to petitioners' contention, under the pertinent provisions of the California Code, a court's entry of an order dismissing an action upon expiration of the three- or five-year statutory periods has substantive significance and is not a mere "housekeeping procedure." These provisions are not self-executing and do not provide, upon expiration of the statutory time periods, that an action is automatically dismissed and hence no longer pending.

Because the sections of the California Code that cover the three- and five-year periods contain similar provisions, the court will analyze only one of these statutory time limits—the three-year period. Section 583.210 of the California Code provides in part:

> (a) The summons and complaint shall be served upon the defendant within three years after the action is commenced against the defendant. For the purpose of this subdivision an action is commenced at the time the complaint is filed.

Section 583.250 provides:

> (a) If service is not made in an action within the time prescribed in this article [§§ 583.210–583.250]:
>
> (1) The action shall not be further prosecuted and no further proceedings shall be held in the action.
>
> (2) The action shall be dismissed by the court on its own motion or on motion of any person interested in the action,

whether named as a party or not, after notice to the parties.

> (b) The requirements of this article are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute.

The exceptions to which Section 583.250(b) refers are set forth in Sections 583.220, 583.230, and 583.240.[2]

■ In applying Section 583.250, a California court typically would not know, once the three-year period has passed, whether a statutory exception would bar dismissal. For example, Sections 583.220 and 583.230 provide that parties to an action may stipulate to an extension of the applicable time period, but do not require that such a stipulation occur or be filed prior to the expiration of this period. Apparently in part because a court may not know whether any exception applies, Section 583.250(a)(2) does not authorize a court simply to dismiss an action once the statutory time period has run, but rather requires the court or "any person interested in the action" to file a motion to dismiss and to provide notice of such a motion to the parties. Herein, neither the court nor any person filed such a motion to dismiss prior to October 1, 1990. Thus, because the prerequisites under the pertinent provisions of the California Code for dismissal of petitioners' California action were not previously satisfied, the California court could not have dismissed that action prior to petitioners' filing of the instant petition on October 1, 1990.

■ This interpretation of the unambiguous provisions of the California Code is consistent with California appellate court precedent. In *M & R Properties v. Thomson*, 11 Cal.App. 4th 899, 14 Cal.Rptr.2d 579, 580 (1992), the California Court of Appeal, applying Section 583.360, concluded that a civil action in which the court had not issued a written order of dismissal and which had not

---

**2.** With respect to the five-year period, Section 583.310 of the California Code provides:

> An action shall be brought to trial within five years after the action is commenced against the defendant.

Section 583.360 provides:

> (a) An action shall be dismissed by the court on its own motion or on motion of the defendant, after notice to the parties, if the action is

not brought to trial within the time prescribed in this article [§§ 583.310–583.360].

> (b) The requirements of this article are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute.

The exceptions to which Section 583.360(b) refers are set forth in Sections 583.330, 583.340, and 583.350.

yet been brought to trial "was still pending" five years and two months after the complaint was filed. *See also Hughes v. Kimble,* 5 Cal.App.4th 59, 6 Cal.Rptr.2d 616, 621 (1992) (the five-year statute "is not designed arbitrarily to close a proceeding at all events in five years"). Thus, the passage of the three- or five-year statutory periods does not result in the automatic dismissal of a California action. The pertinent provisions of the California Code require, *inter alia,* the filing of a motion and the providing of notice to the parties before a court can dismiss an action based on the running of these statutory periods. Because these prerequisites had not previously been satisfied, petitioners' California action was still "pending" on October 1, 1990.

## V.

■ Next, the August 15, 1994, *nunc pro tunc* order, which the California Court issued in response to a request made by petitioners after they filed the instant petition, does not permit petitioners to avoid the Section 11(a)(5) bar. For the reasons explained above, the conclusion in the *nunc pro tunc* order that the California action was no longer pending as of May 31, 1988, is inconsistent with both the wording of the pertinent provisions of the California Code and California precedent. In its order, the California Superior Court offers no rationale for its divergence from the wording of the California Code or appellate precedent; the order merely states, without explanation, the court's conclusion as to the pendency of the California action. In pronouncing its conclusion that the action was no longer pending as of May 31, 1988, the California court seems to have rewritten history in much the same way as did the *nunc pro tunc* order in *Ma-*

*tos,* which the Court of Appeals for the Federal Circuit concluded was insufficient to overcome the Section 11(a)(5) bar.[3]

Petitioners contend that notwithstanding the lack of explanation by the California Superior Court, its order is binding in this litigation and respondent is precluded from disputing that the California action was no longer pending as of May 31, 1988. Petitioners base their preclusion argument on the doctrine of "full faith and credit," which is made applicable to federal courts by 28 U.S.C. § 1738. Upon review, however, the doctrine of "full faith and credit" does not bar respondent from arguing that the California action was still pending when petitioners filed the instant petition on October 1, 1990, and does not bar this court from resolving that issue on an independent, *de novo* basis.

■ Pursuant to 28 U.S.C. § 1738, state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." "Full faith and credit is a constitutional and statutory command made necessary by the multiplicity of jurisdictions in our federal system, intended to give transjurisdictional effect to the doctrine of res judicata, and within limits, to the doctrine of collateral estoppel." 1B James W. Moore & Jo Desha Lucas, *Moore's Federal Practice* ¶ 0.401, at I–4 (2d ed., 1993 rev.). Full faith and credit as embodied in 28 U.S.C. § 1738 "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466, 102 S.Ct.

---

**3.** In *Matos,* the petitioner filed his Vaccine Act petition after a state court had issued a default judgment against him in a civil action in which the petitioner had sought damages from a hospital for his vaccine-related injuries. Section 11(a)(5)(A) bars a petition for a vaccine-related injury or death if the petition is not filed "before judgment" in a related civil action. *See supra* note 1. After the Court of Federal Claims affirmed the special master's dismissal of the petition, the petitioner returned to state court and obtained a *nunc pro tunc* order vacating the default judgment and entering in its stead an order of voluntary dismissal of the action as of a date prior to the filing of the petition. The Federal Circuit upheld the Court of Federal Claims' dismissal of the petition explaining that the *nunc pro tunc* order was used to "change the history of the case so that it states that something that was not done ... was done." 35 F.3d at 1553. The *nunc pro tunc* order in the instant case would analogously rewrite history because, under the present circumstances and for the reasons set forth above, the California action had not been, and could not properly have been, dismissed prior to October 1, 1990.

1883, 1889, 72 L.Ed.2d 262 (1982); *see also Midgett v. United States,* 221 Ct. Cl. 171, 189, 603 F.2d 835, 845 (1979).

■ Herein, resort to "full faith and credit" does not enable petitioners to avoid the Section 11(a)(5) bar because the state courts of California, in applying res judicata and collateral estoppel, would not give the *nunc pro tunc* order preclusive effect against the United States, *i.e.,* the United States would not be precluded from contesting in subsequent litigation in California state court the California Superior Court's order that the California action was no longer pending as of May 31, 1988.

California's application of res judicata is embodied in Section 1908 of the California Code, which states in pertinent part:

(a) The effect of a judgment or final order [other than against a "specific thing"] ...

(2) ... is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest ..., litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding.

(b) A person who is not a party but who controls an action, individually or in cooperation with others, is bound by the adjudications of litigated matters as if he were a party....

Section 1908 would not preclude the United States from taking a position in this litigation inconsistent with the *nunc pro tunc* order because the United States was not a party or successor in interest to a party in the California action and did not control that action. *See Viceroy Gold Corp. v. Aubry,* 858 F.Supp. 1007, 1017 (N.D.Cal.1994). Similarly, when applying collateral estoppel, California courts have required that "the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." *Lucido v. Superior Court,* 51 Cal.3d 335, 272 Cal.Rptr. 767, 769, 795 P.2d 1223, 1225 (1990), *cert. denied,* 500 U.S. 920, 111 S.Ct. 2021, 114 L.Ed.2d 107 (1991); *see also Bernhard v. Bank of Amer-*ica Nat'l Trust & Sav. Ass'n, 19 Cal.2d 807, 122 P.2d 892, 895 (1942). The United States was not a party to the California action and therefore would not be collaterally estopped by the California Superior Court's conclusions in that action. Therefore, because California courts would not give preclusive effect to the California Superior Court's order in subsequent state litigation against the United States, the doctrine of "full faith and credit" does not bar this court from addressing the merits of the issue of the pendency of petitioners' California action and thus does not permit petitioners to avoid the Section 11(a)(5) bar.

## VI.

Finally, petitioners present what amounts to an equitable argument characterizing themselves as "blameless" for the predicament in which they find themselves. Petitioners' equities, although appealing, are not as one-sided as petitioners argue. In any event, this court is without authority to overrule the special master's decision based on the court's view of the equities.

Petitioners' position does have significant equitable appeal. The Vaccine Act was enacted in part to compensate parents who suffered the loss of a child as a result of a vaccination. Petitioners allegedly suffered such a loss, but the special master nevertheless denied petitioners compensation based on a California civil action that petitioners allegedly had determined not to pursue before they filed the instant petition and that, in any event, petitioners apparently could not pursue unless the defendant therein, against its financial interest, stipulated to an extension of the three- and five-year time periods set forth in the pertinent provisions of the California Code. Hence, petitioners have been barred from securing compensation under the Vaccine Act based on a California action that was of no significant potential economic benefit to petitioners.

■ Petitioners, however, are not completely without fault for their vulnerability to the Section 11(a)(5) bar. Congress designed compensation under the Vaccine Act as an alternative to compensation through civil actions against vaccine administrators and

manufacturers. *Shalala v. Whitecotton,* — U.S. ——, ——, 115 S.Ct. 1477, 1478, 131 L.Ed.2d 374 (1995); *Amendola v. Secretary, HHS,* 989 F.2d 1180, 1183–84 (Fed.Cir.1993). In an effort to efficiently implement its scheme for alternative forms of relief, Congress determined that an individual should not be allowed to pursue simultaneously a civil action for vaccine-related injuries and a petition under the Vaccine Act. Toward this end, Congress included Section 11(a)(5) to preclude the filing of a petition under the Vaccine Act when such a civil action is "pending." *Amendola,* 989 F.2d at 1184; *Flowers,* 49 F.3d at 1560–61. In using the word "pending," Congress unambiguously expressed its intent that a plaintiff take the necessary steps to dismiss a civil action for vaccine-related damages from the court docket before filing a petition for compensation under the Vaccine Act. *See* H.R.Rep. No. 247, 101st Cong., 1st Sess. 511 (1989), *reprinted in* 1989 U.S.C.C.A.N. 1906, 2237. The term "pending" means "not yet completed" and "[a]waiting ... action." *Black's Law Dictionary* 1134 (6th ed. 1990). Therefore, to satisfy Section 11(a)(5) it is not enough that a plaintiff not pursue, or seek to suspend, a pending civil action. Until a court dismisses or enters judgment on a complaint, an action is not completed and awaits further action and, hence, is still pending. Congress reiterated this point that a plaintiff should seek dismissal of a civil action before filing a petition under the Vaccine Act in Section 11(a)(5)(A), which states:

> A plaintiff who on the effective date of this subpart has pending a civil action for damages for a vaccine-related injury or death may, at any time within 2 years after the effective date of this subpart or before judgment, whichever occurs first, petition to have such action dismissed without prejudice or costs and file a petition under subsection (b) of this section for such injury or death.

In this setting, petitioners must accept blame for the situation in which they now find themselves. Congress created an unambiguous road map by which petitioners could avoid the Section 11(a)(5) bar, but petitioners failed to follow the appropriate road by not filing a motion to dismiss their California action prior to filing their Vaccine Act petition.

In any event, this court simply lacks authority to resolve this case based on a weighing of the equities. It is Congress' responsibility to define this court's jurisdiction and it is this court's responsibility to apply that jurisdiction as created by Congress. *E.g., Beck v. Secretary, HHS,* 924 F.2d 1029, 1036 (Fed.Cir.1991). Whenever Congress creates jurisdictional prerequisites, there is a risk that the defined prerequisites, when applied to a particular set of facts, will prove inequitable. But it is Congress' responsibility when drafting a jurisdictional statute to balance the equities in a manner that Congress concludes is appropriate. With respect to petitions under the Vaccine Act, Congress exercised its authority and established its desired balance by specifying certain prerequisites for filing such petitions, including prerequisites regarding dismissal of pending civil actions for vaccine-related damages. The words Congress chose in defining this prerequisite are unambiguous and this court lacks authority to disturb the balance that Congress created. This court's role is limited to applying Congress' statute as written, and Section 11(a)(5), as written, requires dismissal of the instant petition.

### Conclusion

For the reasons set forth above, this court affirms the special master's May 4, 1995, order dismissing the instant petition. The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.