OPINION OF THE COURT
Ellen Gesmer, J.
Plaintiff Marguerite Acito (the wife) moves for dismissal of this divorce action, based on the death of defendant Thomas Acito (the husband) on December 9, 2007. Frank T. D’Onofrio, Jr., the court-appointed guardian for the husband prior to his death, opposes the wife’s motion and cross-moves for an order substituting the husband’s estate for the husband as the defendant in this action, and for entry of a judgment of divorce nunc pro tunc. For the reasons set forth below, the court grants the wife’s motion and denies Mr. D’Onofrio’s cross motion.
Facts
The husband and wife were married on September 22, 1968. They had no children together, although each had children from prior relationships.
The wife commenced this divorce action by filing a summons and complaint on September 24, 2003. The husband appeared, but never interposed an answer or counterclaims. At the time of commencement, the husband and wife were both 78 years old and their children were all adults.
On or about March 14, 2006, the court received a letter from the Putnam County Department of Social Services and Mental Health and Youth Bureau advising the court that the Adult Protective Services (APS) unit had conducted a psychiatric evaluation of the husband as part of its investigation into possible financial exploitation of him. The evaluation determined that the husband did not have “sufficient capacity as it relates *834 to his activities of daily living, including but not limited: to money management, banking, cooking, shopping and housekeeping.” As a result of this finding, APS filed a guardianship proceeding under article 81 of the Mental Hygiene Law in Putnam County Supreme Court (the guardianship court), seeking appointment of a guardian of the husband’s person and property (the guardianship proceeding).
By a commission with findings of fact and conclusions of law dated August 17, 2006 (the guardianship commission), the guardianship court appointed attorney Frank T. D’Onofrio, Jr., a cousin of the husband, as guardian of the husband’s person and property. Paragraph 10 of the guardianship commission authorized Mr. D’Onofrio to “prosecute and defend civil proceedings . . . and settle and compromise all matters related to such proceedings,” including this divorce action, provided, however, that “all settlements are subject to the approval of [the guardianship court].”
On October 22, 2007, the wife’s attorney and Mr. D’Onofrio advised this court that they had reached an agreement in principle on the terms of a divorce settlement. I then held an inquest on the wife’s grounds for divorce. I stated on the record that I would reserve decision “so that when there is a final approval of the stipulation [of settlement of the divorce by the guardianship court], I can then decide the grounds for divorce and then you can submit the papers [for the divorce] to be completed.” I then set control dates, with the input of Mr. D’Onofrio and the wife’s counsel, for submission of the written stipulation for my approval, and for the parties to return to court on a date by which it was hoped the guardianship court would have had time to determine whether or not it approved the settlement terms.
On December 6, 2007, the wife, the wife’s attorney, and Mr. D’Onofrio signed a “Stipulation and Order” which contained the terms of their divorce settlement (the agreement). None of the signatures was notarized or acknowledged. On December 6, 2007, at Mr. D’Onofrio’s request, I “so ordered” the agreement. On December 9, 2007, the husband died. The agreement was never submitted to the guardianship court for approval.
On April 7, 2008, the Putnam County Surrogate’s Court issued temporary letters of administration giving the husband’s son, Gregory Acito, limited authority to collect the assets of the husband and pay all expenses associated with the preservation of real estate in the husband’s name. On May 30, 2008, the Sur *835 rogate’s Court issued an order additionally authorizing Gregory Acito to “attempt to finalize the divorce” action. Mr. D’Onofrio, whose authority as guardian for the husband lapsed by operation of law upon the husband’s death, is now the attorney for Gregory Acito in the Surrogate’s Court proceeding.
Analysis
In arguing that the divorce action must be dismissed, the wife cites the general rule that a divorce action abates upon the death of one of the parties (Matter of Forgione, 237 AD2d 438 [2d Dept 1997], lv denied 90 NY2d 804 [1997]). Mr. D’Onofrio responds that the courts have created a narrow exception to this rule to permit entry of a judgment where there has been “a final adjudication of divorce but [the court] has not performed ‘the mere ministerial act of entering the final judgment’ ” (Matter of Forgione, 237 AD2d at 438, quoting Cornell v Cornell, 7 NY2d 164, 170 [1959]; see also Zuckerman v Zuckerman, 34 AD3d 403 [1st Dept 2006]). The question, then, is whether there was anything more than a “mere ministerial act” required prior to entry of a judgment of divorce in this case.
In support of her position, the wife first argues, citing Matisoff v Dobi (90 NY2d 127 [1997]), that the requirement that a matrimonial agreement be “subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded” (Domestic Relations Law § 236 [B] [3]) applies here. Consequently, she argues that the agreement is neither valid nor enforceable, and could not serve as the basis for entry of a judgment of divorce. However, in Rubenfeld v Rubenfeld (279 AD2d 153 [1st Dept 2001]) the Appellate Division held that
“[Domestic Relations Law § 236 (B) (3)] ‘applies only to agreements entered into outside the context of a pending judicial proceeding, such as antenuptial agreements. We do not construe the statute as restricting the ability of the parties to terminate litigation upon mutually agreeable terms especially where, as here, the court has exercised its oversight’ ” (279 AD2d at 158, quoting Sanders v Copley, 151 AD2d 350, 351-352 [1st Dept 1989]; see also Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:12, at 343 [1999 ed]).
The Appellate Division in the First Department pointed out *836 that this result was consistent with its holding in Hargett v Hargett (256 AD2d 50 [1st Dept 1998]), where it refused to apply Domestic Relations Law § 236 (B) (3) in a postdivorce context, pointing out that the statute “by its terms, applies only to agreements ‘made before or during the marriage’ ” (256 AD2d at 50, citing also Sanders v Copley, 151 AD2d 350, 351-352 [1989]). This result is also consistent with case law in the Second Department (Nordgren v Nordgren, 264 AD2d 828 [2d Dept 1999]; Natole v Natole, 256 AD2d 558 [2d Dept 1998]; De Jose v De Jose, 104 AD2d 629 [2d Dept 1984], affd 66 NY2d 804 [1985]; Harrington v Harrington, 103 AD2d 356 [2d Dept 1984]; Robinson v Robinson, 111 AD2d 316 [2d Dept 1985]).
While Rubenfeld concerned an oral agreement, the First Department has recently refused to apply the requirements of Domestic Relations Law § 236 (B) (3) to a written agreement entered into during the pendency of a divorce action (Williams v Williams, 57 AD3d 233 [1st Dept 2008]). In that case, the wife moved to set aside a written agreement entered into in open court, on the ground that it was not acknowledged. The Appellate Division rejected this argument and upheld the agreement, while reiterating that an earlier agreement between the parties, signed before the commencement of the divorce action, was invalid because it was not acknowledged in accordance with Domestic Relations Law § 236 (B) (3).
In this case, the agreement between the parties was executed in the context of a pending divorce proceeding, and was subject to judicial oversight, even though it was not signed in open court. Under these facts, and in light of the binding precedent of Rubenfeld and Williams, the agreement is not subject to the requirements of Domestic Relations Law § 236 (B) (3) and, absent any other considerations, would be enforceable.
However, the wife also argues that something more than a “mere ministerial act” was required prior to entry of a divorce judgment, because the agreement was never approved by the guardianship court. Since a court-appointed guardian only has the powers conferred on him by the guardianship commission (Mental Hygiene Law § 81.20 [a] [1]), Mr. D’Onofrio’s execution of the agreement did not create a binding divorce settlement until it was approved by the guardianship court.
Mr. D’Onofrio attempts to avoid a finding that the agreement was not valid by arguing that the guardianship court’s approval of the agreement was a “mere ministerial act.” Specifically, he argues that, in light of this court’s approval of the *837 agreement, the guardianship court would have had no choice but to approve it, because to do otherwise would have violated the rule that a court “should not ordinarily reconsider, disturb or overrule an order ... of another court of co-ordinate jurisdiction” (Matter of J.W., 17 Misc 3d 1111[A], 2007 NY Slip Op 51923[U], *2 [Sup Ct, Bronx County 2007], quoting Mount Sinai Hosp. v Davis, 8 AD2d 361, 363 [1st Dept 1959]; see also Matter of Dondi v Jones, 40 NY2d 8, 15 [1976]). That argument is wrong. While there is some overlap in the subject matter and personal jurisdiction of this court and the guardianship court, they are not completely “co-ordinate.” Most significantly, the guardianship court had a duty to review the agreement solely from the point of view of the purposes to be achieved by the guardianship, which is different from the role of this court in reviewing the agreement. Thus, until the guardianship court had reviewed and approved the agreement, it was not valid. Therefore, this court cannot enter a divorce judgment based on the agreement.
This result may appear anomalous, since it is the wife who is arguing that the agreement was not valid until approved by the guardianship court, even though that review process was certainly not intended for her benefit. That anomaly does not change the result. Mr. D’Onofrio cannot retroactively be given greater authority as guardian than was granted to him by the terms of the guardianship commission. Since he only had authority to settle this action under the supervision of the guardianship court, the husband’s death cannot increase the scope of his authority to permit him to settle the action without the approval of that court.
For all of these reasons, it is ordered that the wife’s motion for dismissal of the divorce action based upon the husband’s death on December 9, 2007 is granted; and it is further ordered that the cross motion seeking substitution of the husband’s estate for the husband as the defendant in this action, and entry of a judgment of divorce nunc pro tunc, is denied.